(1) Counsel for the appellee cited *Phipps* v. *The State*, 7 Blackf. 512; *Rugby Charity* v. *Merryweather*, 11 East. 376; *Jarvis* v. *Dean*, 3 Bingh. 447; 2 Bouv. Inst. 186, No. 1632, and authorities cited; *Regina* v. *Tything of East Mark*, 12 Jur. 332, 17 L. J., Q. B., 177, 6 Harr. Dig. 1612; *Rex* v. *Lloyd*, 1 Camp. 260, *Ellenborough*.

---

### ROURKE v. ROURKE.

Complaint for divorce and alimony. Causes alleged, habitual drunkenness, cruel treatment, and neglect to provide. Allegation that defendant owned eighty acres of land in *Miami* county, worth 2,000 dollars; that he had no personal property, except what plaintiff brought to him at their marriage; that plaintiff owned forty acres of land in her own right; that there was no issue of the marriage; that plaintiff

had one child by a former husband; that defendant had no children. Prayer for a divorce, for the personal property, for plaintiff's real estate, for one-third of defendant's land, or alimony in lieu of it, and for general relief. Defendant was defaulted. Decree for divorce on account of the misconduct of the defendant, and that he pay as alimony 850 dollars—200 dollars within six months, 200 dollars within 18 months, and 450 dollars within three years, if surety should be given by the defendant within thirty days—if not, execution to issue for the whole amount; and until payment or surety given, defendant was enjoined from selling his land in *Miami* county.

*Held,* that the decree, though conditional as to the time of payment, is authorized by statute.

*Held,* also, that the Court should have specified the nature of the security to be taken, and provided for its approval.

*Held,* also, that the Court had power to grant the injunction, though the land lay in another county, but should not have granted it in this case, because it was not prayed.

*Held,* also, that the amount of the decree for alimony was extravagant, and unjust under the statute.

APPEAL from the *Cass* Circuit Court.

GOOKINS, J.—Complaint by *Mary R. Rourke* against *Charles Rourke,* her husband, for a divorce and alimony. The causes alleged for a divorce were habitual drunkenness, cruel treatment, and neglect to provide for his family.

The complaint alleged that the defendant was the owner of an eighty-acre tract of land, lying in *Miami* county, worth 2,000 dollars; that he had no personal property except a cow and some household furniture, which the plaintiff brought to him at their marriage. She also states that she is the owner of a forty-acre tract of land which she had before marriage; and that there was no issue of the marriage; that she had one child by a former husband, and the defendant had no children. Prayer for a divorce, for the personal property and her real estate, and for one-third of his land, or alimony in lieu of it, and for general relief.

The defendant was personally served with process, but did not answer.

On the trial, the allegations of the complaint were found to be true, and a decree was rendered in favor of

the plaintiff for a divorce on account of the misconduct of the defendant; and that he pay to her as alimony 850 dollars—200 dollars to be paid within six months, 200 dollars within eighteen months, and 450 dollars within three years—to be paid in installments as above, if surety should be given by the defendant; but if he should fail to give such surety within thirty days, execution to issue for the whole amount; and until payment or surety given the defendant was enjoined from selling the land in *Miami* county.

The appellant objects to this decree on the ground that it is conditional; and refers to authorities to show that a judgment or decree cannot be made such or not, upon a condition, a breach of, or compliance with which, is to be determined by the parties. We agree that a judicial power cannot be delegated; and we think it has not been done in this case. It is the time of payment only that is conditional; the amount to be paid is positively adjudged by the Court. So far as the time of payment is concerned, we think the statute expressly authorizes the Court to make the order for payment conditional. It is as follows:

"The decree for alimony to the wife shall be for a sum in gross, and not for annual payments; but the Court, in its discretion, may give a reasonable time for the payment thereof by installments on sufficient surety being given." 2 R. S. p. 237, s. 22.

There seems, however, to be a defect in the form of this order. It neither specifies the nature of the undertaking, nor provides for the approval of its sufficiency. When these are not fixed by law, and when the law appoints no person to approve of bail, it is the duty of the Court to approve it, or to authorize some officer of the Court, usually the clerk or a master, to do it, and also to prescribe the instrument by which it is to be done, as by mortgage, bond, and surety, &c. It may have been supposed that the usual recognizance of bail for a stay of execution was intended by this statute, but such an undertaking would be wholly unsuited to this purpose.

Nov. Term,
1856.

ROURKE
v.
ROURKE.

That part of the order which relates to the giving of surety, must be reversed, with directions to the Circuit Court to specify the nature of a security to be taken, and to approve, or authorize the approval of, the surety to be given.

It is insisted by the appellant that the *Cass* Circuit Court had no power to enjoin a sale of land lying in *Miami* county—1. For want of jurisdiction, and, 2. because no injunction was prayed.

1. The objection for want of jurisdiction is not well taken. Actions for divorce can be brought only in the county in which the plaintiff resides. 2 R. S. p. 234, s. 6. This of necessity gives the Circuit Court of that county power to grant any relief to which the plaintiff may be entitled. The land in *Miami* county was all the property the defendant had, and if that was beyond the plaintiff's reach, she might have been without remedy for her alimony.

2. The objection that an injunction was not prayed, seems valid. Among other requisites of the complaint, the plaintiff must demand the relief to which he supposes himself entitled. 2 R. S. p. 38, s. 49, div. 4. Perhaps had the defendant answered, the general prayer for relief might have authorized an injunction on the final hearing; but we do not so decide. The case is governed by 2 R. S. p. 123, s. 380, viz.: "The relief granted to the plaintiff if there be no answer, cannot exceed the relief demanded in his complaint." This judgment being by default, so much of it as enjoins the sale of the land in *Miami* county must be reversed, no such relief having been prayed.

We are not satisfied with the amount of this decree. The 2 R. S. p. 237, s. 19, authorizes the Court to allow to the wife such alimony as the circumstances of the case, the pecuniary condition of the parties, and the amount of personal property received by the husband from the wife's estate shall render just and proper. The complaint alleges that some personal property (household furniture and a cow) belonged to the plaintiff at

her marriage. It does not state the value, which we think would have been stated had it been considerable. No value having been stated, if any inconvenience results, the plaintiff must suffer the consequences. It alleges the land in *Miami* county to be worth 2,000 dollars. A prudent pleader rarely limits his allegations to true quantities or values, his object being to make them large enough to admit his proof.

What were the circumstances of the parties? The wife had 40 acres of land, a child by a former husband, and some household furniture. The husband has no property except 80 acres of land, alleged to be worth 2,000 dollars, and he is adjudged to pay her 850 dollars, and to pay or secure it within thirty days, or execution to issue for the whole amount. This seems to us too rigorous a proceeding even against a drunkard who has abused his wife. It is not adapted to the pecuniary condition and circumstances of the parties. Premiums ought not to be held out for sundering the marriage relation. Parties should exercise some discretion upon entering into it. The wife in this instance had the experience of a former marriage; and suppose it to be one of those rare cases in which the fault has been all on one side, still, the other party has some rights, which, with considerations of public policy in regard to divorces, induce us to believe that the alimony allowed in this case was too much.

STUART, J.—The following opinion was prepared at the *May* term, 1856, but failed to meet the approbation of the Court on the question of alimony. The record was accordingly handed to Judge GOOKINS, who, it will be seen, has arrived at the same conclusion; so that the Court are unanimous, on the main question. But as they present somewhat different views on other points, aside from the amount of alimony, it was thought better, as they were already prepared, to let them be published together.

In *September*, 1854, *Mary R. Rourke* filed her com-

Nov. Term,
1856.

ROURKE
v.
ROURKE.

plaint setting forth that she was for ten years last past a resident of *Cass* county; that she was married to *Charles Rourke* some three years before petition filed, and since then had lived with him as his wife; that there was no issue of the marriage; and that *Charles* was an habitual drunkard—wasting his substance, making no provision for his family, and treating his wife with cruelty and abuse.

The petition further alleges that he is the owner in fee of eighty acres of land, which is described, lying in *Miami* county, *Indiana*, unencumbered and considerably improved, of the value of 2,000 dollars. It is further alleged, that at the time of the marriage he owned no personal property; that all the household furniture, &c., belonged to the petitioner; that she owned forty acres of land in her own right, which is also described.

The prayer of the petition is for a divorce; that the personal and real estate owned by her at the marriage be decreed to her; that she have also decreed to her one-third of her husband's land in fee; that she be allowed alimony, and have such other relief generally as, &c.

The defendant was defaulted; divorce was decreed; and alimony was allowed to the amount of 850 dollars, payable in installments, at six months, eighteen months, and three years. An order was also entered enjoining *Charles* from disposing of his property in *Miami* county until the judgment was either paid or replevied. It was further certified that the divorce was granted for the misconduct of the husband.

The defendant below, *Charles Rourke*, appeals.

It is proper to remark that there is no value alleged of the personal property; nor is either the personalty or the land owned in her own right mentioned in the final decree. The presumption is that the petitioner was left in the undisturbed possession both of the personal property and the forty acres of land.

Against this decree it is argued that it is conditional. The decree, it is said, is payable by installments, provided sufficient security be given in thirty days; but in case

the defendant fails to give such security, execution may issue for the full amount of the alimony, 850 dollars. Hence, it is argued that the effect of the decree is conditional, depending on the fact, extrinsic of the record, whether the defendant give sufficient bail in thirty days. The objection is more ingenious than sound. The decree is in substantial accordance with the statute. "The court may, in its discretion, give a reasonable time for the payment thereof by installments, on sufficient surety being given." 2 R. S. p. 237.

It is further objected, that the Court had no power to grant the injunction restraining the sale of land lying in *Miami* county, both because there was no prayer in the bill to that effect, (2 R. S. p. 123, s. 380,) and because the land was not within the jurisdiction of the *Cass* Circuit Court. It is probable that the injunction was, at best, but useless. During the pendency of the suit, the Court had clearly the power. 2 R. S. p. 237, s. 17.—*Id.* p. 59. What the effect of such a restraining order would be, or whether it should be specially prayed for in every case, it is not necessary to decide. That would seem to be the better practice. 2 R. S. p. 123. The case of *Frakes* v. *Brown*, 2 Blackf. 295, is an exposition of the statute of 1824, conceived in almost the same words as the seventeenth section, *supra*. R. S. 1824, p. 157, s. 6. The general effect of such an order is sufficiently indicated in that case. The decree would have been a lien on the land had it been situate in *Cass* county. 2 Blackf. *supra*. But to make it a lien on the land in *Miami* county, a certified transcript of the judgment should have been filed there. 2 R. S. p. 155. After decree, the case was no longer pending in the *Cass* Circuit Court; and it was no longer in the power of that Court to make restraining orders. That power is limited to the pendency of the petition for divorce. Section 17, *supra*. But though that injunction may be a nullity, it is not such an error as should reverse the decree. Any such irregularity being amendable in the Circuit Court,

would be regarded as corrected here. *The State* v. *Cross,* 6 Ind. R. 387.

The case at bar is complicated only by the question of property. The law in relation to it is found in sections 18 and 19, 2 R. S. p. 237.

"Sec. 18. A divorce granted for the misconduct of the husband, shall entitle the wife to the same rights, so far as her real estate is concerned, that she would have been entitled to by his death.

"Sec. 19. The court shall make such other decree for alimony as the circumstances of the case, the pecuniary condition of the parties, and the amount of the personal property received by the husband from the wife's estate, shall render just and proper."

To ascertain the rights of the wife upon the death of her husband, as contemplated in section 18, it is necessary to refer to the act regulating descents. The seventeenth section of that act provides that one-third of his real estate shall descend to her in fee, free from all demands of creditors. 1 R. S. p. 250. The qualifications attached to it have no bearing on the case at bar.

The eighteenth section, *supra,* is further illustrated by the twentieth section, thus:

"A divorce decreed on account of the misconduct of the wife, shall entitle the husband to the same rights, so far as his or her real estate is concerned, as he would have been entitled to by her death." 2 R. S. p. 237.

Taking these sections together, the fair construction seems to be, that a divorce granted for the misconduct of one of the parties, entitled the other to one-third of the real estate of such offending party in the same manner as though such offender were dead. It was clearly very far from the intention of the legislature to make such an invidious discrimination against the wife, as the literal meaning of the language would seem to import. Such intention seems to be wholly inconsistent with the context and spirit of the chapter of the revision in which

it is found, as well as with the spirit of all our recent legislation on the subject of marital rights. All other parts of the revision tend to discriminate in favor of, instead of against the rights of married women. So that this, under our statutory rules of construction, might well, it seems to me, have been explained according to the spirit of the act, without any violence to the language. Thus, the statutory rule is, that words shall be taken in their plain and usual sense, unless such construction be plainly repugnant to the intent of the legislature, or of the context of the same statute. 2 R. S. p. 339.

But as the majority of the Court in the case of *Rice* v. *Rice*, 6 Ind. R. 100, in which I did not take any part, arrived at a different conclusion, it may be regarded as *res adjudicata*. If these sections, as thus construed, do not reflect the will of the legislature, there is no remedy until the law-making power explains its meaning by amendment.

The case then stands thus: The petitioner has all her rights to her own forty acres of land confirmed to her as fully as though her husband were dead. She has all the personal property. If the decree for 850 dollars alimony is to be supported, it must be under the nineteenth section, *supra*. The circumstances of the case, the pecuniary condition of the parties, and the amount of personal property received by the husband from the wife's estate, should show such allowance to be just and proper.

Such considerations in support of the decree in this case are slender indeed. There are no children. The personal property she brought to her husband—indeed, all their personalty is presumed to be in her possession. The period of the marriage was only about three years. Aside from his misconduct, no special circumstances favorable to her are disclosed. She is no doubt entitled to some alimony. We would presume largely in favor of the discretion of the Court in allowing it. But the sum allowed seems to me, under all the circumstances,

extravagant. The value of the land in *Miami* county, laid, perhaps, under a *videlicit*, is 2,000 dollars. This is his all; and she is allowed more than a third of that sum in addition to all her own property. A third of the land in fee is all she claimed. It is all she could be entitled to, even under my construction of the law. The equivalent of that third, should be the criterion under the construction of a majority of the Court, as given in the *Rice* case. In addition to this, the strong probability is, that the land is not worth half the alleged value. The listing for taxation is part of the public history of the State, accessible to the Court. The average assessed value of lands in *Miami* county is not 900 dollars to the eighty acres. In that view, the decree would give her the whole, or, at least, the greater part of her husband's property. This is not the policy of the law, and never was the intention of the legislature.

Regarding, as we are thus constrained to do, the alimony as extravagant, it can be in no wise prejudicial to her just rights to remand that question for reconsideration by the Court or a jury at his costs. In this we but adopt the language of Judge *Story* in *Blunt* v. *Little*, 3 Mason, 102. Accordingly, also, *Diblin* v. *Murphy*, 3 Sandf. S. C. R. 19; *Armitage* v. *Haley*, 4 Ad. and El. 917. Taking every thing favorable to the wife to be admitted by the default, we cannot reasonably reach any other result.

The faults of the hasband may have been grievous, and the complaints of the wife just. Indeed, this much is admitted by his failing to defend. But he is not therefore outlawed, nor is his property, or the chief part of it, to be regarded as confiscated for the benefit of his wife.

The reasons why the domestic relations should be regulated by law, both as to persons and property, are urgent and obvious. Marriage is, indeed, a civil contract. But it is one of those which, from considerations of public policy, the law does not permit to be as loosely made or as easily dissolved as other contracts. Ordina-

rily, contracts can be dissolved by similar symbols as those by which they were witnessed. A parol agreement may be discharged by parol; a contract under seal, by a writing of equal solemnity. Not so with the marriage contract. It is not the policy of the State to trust the parties to go before a minister or magistrate and dissolve a marriage as they made it. Unlike most other contracts, questions relating to future support and the good order of society are involved in, and complicate the marriage relation. Hence, the State wisely deems it her right and duty to adopt a specific policy in relation to it—to require for its dissolution a solemn judicial decision.

True, in this, as in many other questions, much must depend on the discretion of the courts. But it is a sound discretion, regulated as far as may be by fixed rules. The law aims to adjust the dissolution on such terms as shall be equitable to the parties, under the peculiar circumstances of each case.

But to encourage divorces by such extravagant decrees as this,—to render the marriage tie brittle, and its obligations and duties easily thrown aside, holding out such premiums by way of alimony to stimulate the caprice or the avarice of parties,—must be conceded to be questionable policy. Imperfect though its bliss may be in the particular case, the ends of social and civil polity are usually better subserved by its continuance, than by its inconsiderate dissolution.

If to the great facility for procuring divorces, the courts superadd large premiums in the way of alimony, many who might otherwise live in comparative happiness will become restive under the matrimonial yoke.

I am therefore of opinion that the decree for a divorce should be affirmed—as to the alimony reversed, and re-manded for further proceedings.

PERKINS, J.—In the case of *Rice* v. *Rice*, cited in the preceding opinion of Judge STUART, a construction was given to sections 18 and 20 of the act regulating di-

vorces. And the opinion in that case leaves the impression that the act, as construed, is regarded as inequitable. Further reflection has satisfied me that the construction given in the *Rice* case to the sections of the statute above referred to is correct, and also that the statute thus construed is equitable, and expressive of the intention of the legislature.

This is my reason: Section 20 provides that a divorce decreed on account of the misconduct of the wife, shall entitle the husband to the same rights in the real estate of the wife as her death. This is all the provision that is made for the husband, and in a great majority of cases it would be but slight. Section 18 does not give to the wife, when a divorce is decreed on account of the misconduct of the husband, the same right in her husband's real estate which she would be entitled to on his death; and why? Because—1. Section 19 immediately following, makes provision for her in lieu of such interest in the real estate, by authorizing the Court "to make such other decree for alimony, as the circumstances of the case," &c., shall render just and proper. 2. Because such provision will be likely to be made more equitably to both parties than would that of giving the wife the fixed one, of a third of the real estate.

To give the divorced wife simply one-third of the real estate, would not provide her with the ready means she might need, while at the same time, if the husband's means were invested mostly in real estate, he being at the same time largely indebted, one-third of his real estate given to the wife, might not leave him, after payment of his debts, any thing for his own, or his children's support—children, perhaps, by a former, perhaps, by the then divorced wife. And, if one-third of his real estate thus given, might strip him, much more would that, and alimony in addition. Reflection will bring to the mind of any person additional considerations of equal force, which should have determined the legislature, and doubtless did, to give the statute its present phrase.

ology, and to leave the provision for the wife to be made by the court or jury, on granting the divorce, upon a view of all the circumstances of the case.

*Per Curiam.*—The decree for a divorce is affirmed. The decree for alimony is reversed for a new trial upon the question of the amount to be allowed; and the cause is remanded for further proceedings not inconsistent with this opinion. Judgment for costs against the appellee.

*H. P. Biddle* and *B. W. Peters*, for the appellant.

*D. D. Pratt* and *S. C. Taber*, for the appellee.

Nov. Term,
1856.

(1) Counsel for the appellant cited the following authorities:

The impropriety of leaving a decree conditional, or to be enforced conditionally, and of leaving the question whether the condition is or is not complied with to the parties themselves, or to the clerk of the court, must be apparent to every reflecting mind. *Farmer* v. *Samuel,* 4 Litt. 187. The terms of a judgment must be unconditionally settled by the court; they should not depend upon any thing to performed *in pais.* *Barton* v. *Campbell's heirs,* 2 Dana, 421. *Hancock* v. *Hancock,* 1 Monr. 121.

The *Cass* Circuit Court cannot grant an injunction against the sale of lands lying in *Miami* county. A Circuit Court is a county court only, and its jurisdiction, unless extended by statute, is limited to the bounds of the county. *Sherry* v. *Winton,* 1 Ind. R. 96.