*W. R. Harrison*, for appellant.

*Buskirk & Glessner*, for appellee.

———————◆———————

## EWING *v.* EWING.

COMMON PLEAS COURTS.—DIVORCE.—The Courts of Common Pleas have jurisdiction of suits for divorce.

CODE.—DIVORCE.—The proceeding for divorce is so far special as to allow all the provisions of the divorce act to have their full force, unaffected by the code.

SAME.—JURISDICTION.—The residence of the plaintiff, and not that of the defendant, determines the jurisdiction in suits for divorce. Process may be served in any county in the state, and service by copy is personal service.

SAME.—NEW TRIALS.—Section 99 of the code, which provides for relieving a party from a judgment taken against him through his mistake, inadvertence, surprise or excusable neglect, and section 356, which provides for granting a new trial within one year, on cause shown, do not apply to decrees for divorce.

ALIMONY.—CUSTODY OF CHILDREN.—The order as to alimony and the custody of children, which is only an incident of the decree for divorce, can be modified or set aside by a proceeding under section 7 of the act of *March* 4, 1859, (2 G. & H. 349, note.)

APPEAL from the *De Kalb* Common Pleas.

GREGORY, J.— *Charlotte F. Ewing*, on the 6th of *January*,

1864, filed her complaint in the court below against the appellant, for divorce, alimony and the custody of her child. The complaint charged that the plaintiff, for more than twenty years last past, had been, and then was, a *bona fide* resident of this state, and then was a resident of the county in which this suit was brought. The alleged causes for divorce were want of affection on the part of the husband, and his failure to make reasonable provision for his family. The summons was issued to the sheriff of *Allen* county, and was by him served on the defendant, by leaving a copy at his usual place of residence, on the day of the filing of the complaint. On the 19th of that month, the defendant was defaulted. The district attorney appeared and resisted the divorce. The court heard the evidence, and found that *all* the allegations of the complaint were true, and decreed a divorce, alimony, and the custody of the child to the wife.

On the 19th of *July* following, the appellant, *William G. Ewing,* filed his complaint for a new trial. On the 19th of *January,* 1865, this complaint was amended. A demurrer to the amended complaint was filed by the appellee, which was sustained, and final judgment for costs rendered thereon. The alleged causes relied on for a new trial were: First, the misconduct of the plaintiff in falsely alleging that she was a resident of the county of *De Kalb,* for the fraudulent purpose of obtaining the decree in the absence, and without the knowledge, of the defendant. Second, that the suit was commenced and the decree rendered during the absence of the defendant from the state, and without any knowledge, actual or otherwise, of its existence and pendency, until the same was determined; that the allegations in the complaint, the commencement of the suit, and the decree, were matters of entire surprise to him, against which, under the circumstances, no ordinary prudence could guard. Third, that the finding of the court was not sustained by the evidence, there being no evidence at all that the plaintiff was, at the commencement of the suit, a

resident of the county of *De Kalb;* the defendant not knowing until after the rendition of the decree, and the adjournment of the court, that there was no evidence offered on this point. The errors assigned are: first, that the court below had no jurisdiction of the person of the defendant, nor of the plaintiff; second, that the court had no jurisdiction of the subject matter; third, that the court erred in sustaining the demurrer to the plaintiff's (defendant's) complaint for a new trial; fourth, that the court erred in refusing to grant a new trial.

This court, in 1861, in the case of *Herron* v. *Herron,* 16 Ind. 129, held that the Common Pleas Courts had jurisdiction in divorce cases; and the question is, shall that decision be overruled? Since the decision in that case, a large number of marriages have been dissolved by the Common Pleas Courts. The parties thus divorced, relying upon the validity of these decrees, have intermarried with others, and children have been born to them. Were this an original question, we confess that we should give great weight, in its determination, to the able argument of the learned counsel of the appellant. This, however, is one of the rules which it is more important shall be settled, than how it is settled. For the reasons stated in *Rockhill* v. *Nelson et al., ante,* p. 422, we are of opinion that the case of *Herron* v. *Herron, supra,* ought not now to be overruled. But while we feel bound to adhere to that ruling, we shall not be constrained by the legal deductions which may be drawn therefrom, in the determination of other questions growing out of the act regulating the granting of divorces.

Had the court jurisdiction of the person of the defendant? By section 6 of the divorce act, (2 G. & H. 350,) it is provided that "Divorces may be decreed by the Circuit Courts of this state, on petition filed by any person who, at the time of the filing of such petition, shall have been a *bona fide* resident of the state one year previous to the filing of the same, and a resident of the county at the time of filing such petition, which *bona fide* residence shall be

duly proven by such petitioner to the satisfaction of the court trying the same."

The code, after making provision for actions in which real estate is involved, for certain actions for the recovery of a penalty or forfeiture imposed by statute, for suits against a public officer, and where a corporation, company, or an individual has an office or agency in any county for the transaction of business, provides that "in all other cases, the action shall be commenced in the county where the defendants, or one of them, has his usual place of residence. Where there are several defendants residing in different counties, the action may be brought in any county where either defendant resides, and a separate summons may be issued to any other county where the other defendants may be found; and in cases of non-residents, or persons having no *permanent residence* in the state, actions may be commenced and process served in any county where they may be found." 2 G. & H., § 33, p. 58. It may be contended, with great plausibility, that, under the code, a party served with process in any county other than that in which the suit is commenced, ought to be put to his plea in abatement, that the plaintiff might have an opportunity to show in reply that he had no *permanent residence in the state,* but it is not necessary for us to decide that question now. The learned counsel of the appellant have furnished us a satisfactory reply to the objection that the court below had no jurisdiction of the person of the defendant. The code is entitled "An act to revise, simplify and abridge the rules, practice, pleadings and forms in *civil cases* in the courts of this state; to abolish distinct forms of action at law, and to provide for the administration of justice in a uniform mode of pleading and practice, without distinction between law and equity." Appellant's counsel, in their brief, say: "A proceeding for divorce can with no more propriety be called 'a civil case,' within the meaning of the code, than a proceeding for the same purpose in the ecclesiastical courts of *England* could be

called a civil case. The proceeding for divorce is a special proceeding, in which relief could be adequately administered if every provision of the code were repealed. An examination of the divorce act will at once satisfy any one that the remedy provided is quite independent of the code. By the first section of the code it is enacted 'that the distinction between *actions at law* and *suits in equity*, and the distinct *forms* of all such *actions and suits*, heretofore existing, are abolished, and there shall be in this state, hereafter, but one *form* of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action.'

"By the phrase, 'action at law,' as used in this section, all that was meant or intended was the well known common law actions; and the words 'suits in equity,' comprehend and embrace the various equitable proceedings as understood in *England* and in this country, and nothing more. These propositions are too clear to admit of argument or doubt."

But whether counsel are, or are not, correct, it is clear to our minds that the proceeding for divorce is so far special as to allow all the provisions of the divorce act to have their full force and effect, unaffected by the code.

The case of *Herron* v. *Herron, supra*, decides that Common Pleas Courts have concurrent jurisdiction with Circuit Courts in divorce cases; it follows that the proceedings must be alike in both. Then there can be no divorce case unless it is authorized by the act on that subject. The sixth section of that act is as much a rule for the Common Pleas as it is for the Circuit Court. Any other rule of construction would strike out of the divorce act one of its most wholesome provisions, or deprive the Common Pleas Courts of jurisdiction in all cases in which the plaintiff and defendant reside in different counties. Section 10 of the divorce act provides that "the clerk of the court in which such petition is filed shall issue a summons for the defendant to appear and

answer said petition; which summons shall be *personally served* on said defendant, *if a resident of the state*, either by reading, or leaving a copy at his or her usual place of residence." 2 G. & H. 351. This section, taken in connection with the provisions of section 6, *supra*, shows that the residence of the plaintiff, and not the residence of the defendant, gives jurisdiction; that the process may be served in any county in the state, and that service by copy is *personal* service.

It remains to inquire, did the court below err in sustaining the demurrer to the appellant's complaint for a new trial?

There are two sections of the code authorizing the court, after the term at which the judgment was rendered, to grant new trials, or relieve the party from the judgment. The ninety-ninth section of the code provides that "the court may also, in its discretion, allow a party to file his pleading after the time limited therefor; and, at any time within one year, relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, and supply an omission in any proceeding."

This court has held, under this section, that a party can not be relieved from a judgment or decree after the expiration of a year. *Woolley* v. *Woolley*, 12 Ind. 663. We shall not examine the correctness of this ruling as we do not think it necessary in the case in judgment.

The three hundred and fifty-sixth section of the code provides, that "where causes for a new trial are discovered after the term at which the verdict or decision was rendered, the application may be made by a complaint filed with the clerk, not later than the second term after the discovery, on which a summons shall issue, as on other complaints, requiring the adverse party to appear and answer it on or before the first day of the next term. The application shall stand for hearing at the term at which the summons is returned executed, and shall be summarily decided by the

court upon the evidence produced by the parties. But no such application shall be made more than one year after the final judgment was rendered."

It might be enough for us to say that neither of these sections apply, in terms, to divorce cases, and are only applicable to "civil actions" under the code; but the history of our judicial decisions and legislation on this subject will demonstrate that it was not the intention of the legislature to embrace divorce cases in these provisions. *McJunkin* v. *McJunkin*, 3 Ind. 30, was decided in 1851, and although that seemed to be a hard case, and the decision arrived at was, to say the least, by doubtful construction, looking to the consequences to follow the opening of judgments of divorce, yet the legislature, in 1852, made the ruling in that case a statutory provision. 2 G. & H., § 43, p. 66. The legislature, in 1859, in an act amending the divorce law, provided that "parties against whom a judgment of divorce has been heretofore, or shall be hereafter, rendered, without other notice than publication in a newspaper, may have the same opened at any time so far as relates to the care, support and custody of the children. Parties against whom a judgment of divorce shall hereafter be rendered, without other notice than publication in a newspaper, may, at any time within two years after the rendition of such judgment, have the same opened, and be allowed to defend, so far as the same relates to the allowance of alimony and the disposition of property. Before any judgment shall be opened as above for any cause, the applicant shall file a statement of the causes relied upon, and give such notice thereof as the court, in term time, or the judge thereof in vacation, shall require; and when the cause specified by such applicant relates to alimony and the disposition of property, the applicant shall file an affidavit stating that during the pendency of the action, he or she received no actual notice thereof in time to appear in court at the time of the trial of such action, and object to said judgment, and shall also pay such costs as the court may direct. Any

property which may have been sold under any such judgment so sought to be opened, and which shall have passed into the hands of a purchaser, or purchasers, in good faith, shall not be affected by any proceeding consequent upon the opening of such judgment: *Provided*, that the dissolution of the marriage contract shall in no case be set aside under the provisions of this act." 2 G. & H., § 7, p. 349. But against this current of decision and legislation, it is said that appeals may be taken to this court in divorce cases, and that the consequences of a reversal would be the same as the opening of the judgment or the granting of a new trial. If it were admitted that this court could, by reversal, set aside a divorce *a vinculo*, it would not follow that the opening of a judgment, or the granting of a new trial, would be attended with the same results. In subsequent marriages there is one innocent person, not a party to the record. All that such a person can know must be learned from the face of the record. If the proceedings are regular, and in a court of competent jurisdiction, may not such person trust them? But if they are irregular, and the time for appeal has not expired, then the party contracting marriage with the divorced person takes the chances of a reversal, with legal notice of the irregularity. In the case of *Parish* v. *Parish*, 9 Ohio State Reports 534, PECK, J., in delivering the opinion of the court, after quoting the *Ohio* statute, says: "This statutory provision is nothing more than a legislative recognition of the principle of public policy which had been repeatedly affirmed by the courts, that a judgment or decree which affects directly the *status* of married persons, by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened. Such a course would endanger the peace and good order of society, and the happiness and well-being of those who, innocently relying upon the *stability* of a decree of a court of competent jurisdiction, have formed a connection with the person who wrongfully, perhaps, procured its promul-

gation." The *Ohio* case is sustained by the case of *Greene* v. *Greene*, 2 Gray 361. In the language of Chief Justice SHAW, in the latter case, "consequences are not always conclusive against a rule of positive law; but where it is a question of construction, either of a statute provision, or a rule of common law, the consequences to which any particular construction or application would lead, have a strong bearing upon the question, what the legislature intended, or what is the just extent and qualification of the rule."

In the light of this well-known and familiar rule, we cannot say that the legislature intended to embrace divorce cases in the provisions of sections 99 and 356 of the code.

The orders as to alimony and the custody of the child are but incidents to the decree of divorce, and we know of no rule of law by which that part of the decree can be reached, except that provided for by statute, and the appellant is not within its provisions in his application for a new trial.

The judgment is affirmed, with costs.

*J. Morris* and *R. Brackenridge*, for appellant.

*A. Ellison*, for appellee.