MUSSELMAN *v.* MUSSELMAN.

PRACTICE.—*New Trial.—Motion.*—The assignment of causes for a new trial should be certain and specific, so as to apprise the court and the opposite party of the ground upon which the new trial is asked. The particular irregularity of the court or prevailing party must be designated, where either of such causes is relied upon for a new trial.

Musselman *v.* Musselman.

SAME.—*Pleading.*—*Amendment.*—It is within the discretion of the court to allow a proper amendment of the pleadings at any time before the jury retire to deliberate on their verdict.

SAME.—*Appeal.*—*Witness.*—The conduct of a witness, while testifying, towards a party, cannot be considered on appeal, where no bill of exceptions or affidavit showing such conduct appears of record.

DIVORCE.—*Civil Action.*—*Change of Venue.*—A suit for divorce is not a civil action within the meaning of sec. 207 of the code (2 G. & H. 154), which provides for a change of venue in civil actions, and the refusal of a court to grant a change of venue from the county, upon motion and affidavit assigning as a reason therefor the undue influence of the defendant over the citizens of such county, is not erroneous.

SAME.—*Trial.*—*Jury.*—*Struck Jury.*—A party to a suit for divorce is not entitled to a trial by jury as a matter of right. The act (2 G. & H. 192) providing for struck juries does not apply to a suit for a divorce.

PRACTICE.—*Evidence.*—A party cannot avail himself of error in the admission of irrelevant evidence, where his own persistent questions call it out.

SAME.—*New Trial.*—*Smoking in Court.*—Where it does not appear, on appeal, how smoking in court by the judge and attorneys prevented a party from having a fair trial, and the party assigning such conduct as a ground for a new trial does not appear to have objected to it, there is nothing for the Supreme Court to consider in relation to such conduct.

SAME.—*Assignment of Errors.*—*Judge.*—The assignment, as a reason for a new trial, "that the court erred in sleeping or sitting with his eyes closed during the reading of the written evidence on the part of the plaintiff at the trial of the cause," is too vague and indefinite. If the judge was asleep, the party should have ceased reading or awakened him; if he sat merely with his eyes closed, it is presumed he did so to hear the more acutely.

DIVORCE.—*Parties.*—*Conspiracy.*—In a suit for a divorce, where one cause alleged in the petition was, that the defendant conspired with certain other persons to and did cause the petitioner to be adjudged insane, such persons are not necessary or proper parties to the suit.

SAME.—*Pleading.*—*Petition for Divorce.*—A petition or cross petition for divorce need not be sworn to. Section 13, 2 G. & H. 352, applied only to the answer.

SAME.—*Practice.*—*Dismissal of Petition.*—*Cross Petition.*—Where a cross petition for divorce is filed, the court may decree a divorce to the party legally entitled thereto; and upon the dismissal of the petition, the defendant may proceed to trial of the cross petition without further notice to the plaintiff.

SAME.—*Allowance.*—Upon granting a decree of divorce to the wife, or refusing one to the husband, the court should make an allowance to the wife to pay all her reasonable expenses in the prosecution or defence of the petition for divorce.

SAME.—*Alimony.*—*Judgment.*—The decree for alimony is an absolute personal judgment, collectible by execution, belongs to the wife, and is in lieu and bar of her interest in the real and personal estate of her husband, and

should be in such sum as the circumstances of the case render just and proper, so that the wife shall not be placed in a worse condition than if she had survived her husband.

SAME.—*Infants.—Custody, Support, and Education of.*—The court in decreeing a divorce should make provision for the guardianship, custody, support, and education of minor children.

From the Cass Circuit Court.

*D. C. Justice*, for appellant.

*N. O. Ross*, for appellee.

BUSKIRK, J.—This was an action by the appellant against the appellee to obtain a divorce. The appellee answered the complaint by a denial and filed a cross complaint, in which she sought a divorce, alimony, and the custody of her daughter, Ida Musselman. The appellant answered the cross complaint.

The cause was submitted to the court for trial, and after the evidence had all been heard, the appellant dismissed his complaint. The court thereupon rendered a finding upon the cross complaint in favor of the appellee. The appellant moved the court for a new trial, assigning therefor twenty-one reasons. The motion was overruled, and the appellant excepted. The court rendered a decree, granting the appellee, upon her cross complaint, a divorce, alimony, and the custody of her infant daughter, Ida. The court also made provision for the support of the said Ida and payment of the attorneys of the appellee.

The only valid assignment of error is the first, and it is based upon the action of the court in overruling the motion for a new trial. The other assignments of error are repetitions of the reasons for a new trial. The first assignment of error presents for review all the reasons for a new trial.

We will, in the first place, consider the reasons for a new trial which present questions that occurred during the trial, and will afterward consider such reasons as call in question the correctness of the ruling of the court after the evidence was closed.

The first and second reasons for a new trial are as follows :

" 1. Irregularity in the proceedings of the court, by which the plaintiff was prevented from having a fair trial.

" 2. Irregularity of the prevailing party, by which the plaintiff was prevented from having a fair trial."

The above did not constitute valid reasons for a new trial, and consequently present no question here. They are too general. The causes for a new trial should be certain and specific enough to apprise the court and opposite party of the ground upon which the new trial was asked. *Humphries* v. *The Adm'rs of Marshall*, 12 Ind. 609 ; *Kent* v. *Lawson*, 12 Ind. 675 ; *Barnard* v. *Graham*, 14 Ind. 322 ; *Snodgrass* v. *Hunt*, 15 Ind. 274 ; *Shurtz* v. *Woolsey*, 18 Ind. 435 ; *Henry* v. *Coats*, 17 Ind. 161 ; *Scoville* v. *Chapman*, 17 Ind. 470 ; *Oiler* v. *Bodkey*, 17 Ind. 600 ; *Horton* v. *Wilson*, 25 Ind. 316 ; *Dawson* v. *Coffman*, 28 Ind. 220 ; *Shirk* v. *Cartright*, 29 Ind. 406.

The reason of the above rule is stated with great force and clearness by this court, in *Barnard* v. *Graham, supra*, where it is said: " Numerous errors might occur on the trial, and be excepted to ; and the reasons for a new trial ought to point out such as are relied upon, so that the attention of the court would be directed to them. Otherwise, it would be of but little use to have written reasons filed at all. Exceptions might be taken to the admission of testimony ; to the exclusion of testimony ; to charges given to the jury ; to the refusal to charge as asked ; and to various other rulings of the court, in the progress of the trial ; and if the general language employed in this case be sufficient, the court would be required to review all its various rulings to which the party had taken exception, although the party called its attention to but one, or, indeed, none of them, on the motion for a new trial."

The third, fourth, fifth, sixth, thirteenth, and twenty-first reasons for a new trial will not be considered until after the others have been disposed of.

The seventh and eighth reasons are as follows :

"7. Error of the court at the November term, 1870 (Hon. Thomas S. Stanfield presiding), in overruling a motion for a change of venue in said cause to another court and county.

"8th. The court erred at the November term, 1870 (Hon. Thomas S. Stanfield presiding), in overruling the plaintiff's motion to change the venue in said cause from Cass county, where said cause was then pending, to some other county, for undue influence of the defendant over the citizens of Cass county."

The motion and affidavit for a change of venue, omitting the formal parts, are as follows:

"The plaintiff in the above entitled cause says that he cannot have a fair and impartial trial of said cause in the county of Cass, owing to the undue influence of said defendant over the citizens of said county; and said affiant further says that the Hon. Horace P. Biddle is disqualified from trying said cause, for the reason that he is a witness and has been counsel of this plaintiff in his general business; and said affiant further says that he cannot have a fair and impartial trial of said cause before the presiding judge, Hon. Thomas S. Stanfield, on account of the bias and prejudice of said judge. And said affiant further says, that the convenience of witnesses and the ends of justice would be promoted by changing said venue to the county of White, Indiana, that being the nearest county in which there is a disinterested court, as affiant believes.

"JOHN T. MUSSELMAN, Plaintiff."

The above was duly sworn to, and was followed by a motion for a change of venue. The court granted the change of venue as to the court, but overruled it as to the county, to which the appellant excepted and reserved the question by a bill of exceptions.

The question presented for our decision is, whether the court erred in refusing to change the venue from the county of Cass. The solution of this question depends upon whether a proceeding for a divorce is a civil action within

Musselman *v.* Musselman.

the meaning of section 207 of the code, 2 G. & H. 154, and whether a party in an action for divorce is entitled to a trial by jury as a matter of right.

Section 207 of the code provides for a change of venue in a civil action.

It was decided by this court, in *Ewing* v. *Ewing*, 24 Ind. 468, that a proceeding for a divorce was a special proceeding, and was not a civil action within the meaning of the code. The appellant was not entitled to a trial by a jury as a matter of right. It was wholly within the discretion of the court below. The court might of its own motion, or by the consent of the parties, or upon the motion of either, have submitted the issues to a jury, but it was not bound to do so. · It would not have been error if the court had submitted the case to a jury, nor can the refusal of the court so to do be regarded as erroneous. This court, in *Morse* v. *Morse*, 25 Ind. 156, use the following language:

" We have discussed the questions arising upon these findings of the jury, upon the assumption that the provisions of the code under which they were evidently had are applicable to divorce cases. They are so discussed in the briefs of counsel on either side. But, in *Ewing* v. *Ewing*, 24 Ind. 468, this court held that the provisions of the statute authorizing divorces prescribed the rules of practice in those cases, and that they are not governed by the code. In *Lewis* v. *Lewis*, 9 Ind. 105, this court held, that 'the rule of procedure in cases of divorce obviously contemplates a trial by the court, and though the court may of its own motion, or by consent of parties, or upon the motion of either party, submit the questions raised by the pleadings to the consideration of a jury, still the verdict may not be in all respects conclusive. And, on the final hearing of the cause, the court may look into the whole case, and disregard so much of the finding of the jury as is plainly without the issue.' And this, we think, is the correct practice." See *Garner* v. *Gordon*, 41 Ind. 92.

The ninth reason is as follows:

"9. The court erred in overruling the plaintiff's motion for a trial by jury of questions of fact and in issue in said cause, which jury was struck under the provisions of an act of the general assembly of said State providing for struck juries in the circuit and common pleas courts in civil cases. Approved March 9th, 1861."

The act above referred to only provides for a struck jury in a civil case, and we have seen that this is not a civil cause. The case, therefore, stands as though the appellant had demanded a trial by a jury selected in the ordinary mode. What we have said in reference to the seventh and eighth causes for a new trial disposes of this one.

" 10.   The court erred in overruling the plaintiff's motion to amend complaint as to the allegation and charge of conspiracy, by making it more specific, definite, and certain, and not allowing plaintiff to make joinder of party conspirators with defendant, Rufus Magee and other persons to plaintiff unknown, by which the plaintiff was prevented from having a fair trial."

The motion of the appellant was as follows :

" The plaintiff herein moves said court, and respectfully prays permission, to amend his complaint in said cause as to so much of the allegation and charge of conspiracy set out in said complaint against defendant and one Rufus Magee and other persons, who at the time of filing said complaint were to the plaintiff unknown, as charged in these words : 'commencing and carrying on a prosecution against this plaintiff charging him with insanity, and finally succeeded in obtaining a judgment of insanity against him, and that he was dangerous to community, and had him confined, in pursuance of said judgment, in the Indiana Hospital for the Insane, at or near Indianapolis, in Marion county, Indiana,' by making said allegations more specific, definite, and certain, by amending and inserting in said complaint the proper names of persons then to this plaintiff unknown, and by making party conspirators and confederates with defendant and said Magee, so charged in complaint, adding thereto,

the names of Nathan O. Ross, David D. Kykeman, Horace P. Biddle, Daniel D. Pratt, James Fitzgerald, Washington Riefsnyder, and Dr. Orpheus Evarts, superintendent of the Indiana Hospital for the Insane."

It is very plain and obvious to us that the ruling of the court below was correct. The appellant charged in his complaint that his wife, the appellee, Rufus Magee, his son-in-law, and other persons whose names were unknown, had conspired and confederated together, and had caused him to be adjudged insane and confined in the insane hospital. The relevant and material portion of the charge was, that his wife had conspired and confederated with others, to have him adjudged insane and confined in the insane hospital. It can make no difference with whom she had conspired. The question was, had she conspired for such purpose with any person? The appellant only asked to amend his complaint by making the above named persons defendants to his action for a divorce. Why make them defendants? What purpose could be accomplished thereby? What remedy was sought against them? What judgment could have been rendered against them? They were in no sense either proper or necessary parties. They did not own or claim to own any property which either the appellant or appellee claimed to own. It was impossible for either or all of the persons named to be necessary parties in determining whether either of the parties was entitled to a divorce. If the persons named had conspired and confederated together, and had wrongfully and maliciously caused the appellant to be adjudged insane and confined in the insane asylum, his remedy, if any, was by an action against them for damages. But no such question could have been adjudicated in this case. The conspiracy on the part of his wife could have been as fully proved under the allegations of the original petition as if the amendment had been made.

Besides, the appellant, having dismissed his action, cannot

be heard to complain of the refusal of the court to permit him to amend it.

"11. The court erred in granting a divorce to defendant and decreeing alimony on amended cross petition, and on a partial and conditional dismissal of plaintiff's complaint and cause in said court."

The 14th section of the divorce act reads as follows:

"Sec. 14. In addition to an answer the defendant may file a cross petition for divorce, and when filed the court shall decree the divorce to the party legally entitled to the same. If the original petition be dismissed after the filing of a cross petition, the defendant may proceed to the trial of the cross petition without further notice to the adverse party." 2 G. & H. 352.

There does not seem to be any room to doubt the power of the court under the above quoted section to grant to the appellee, on her cross petition, a divorce and alimony. It is, however, suggested that the amended cross petition was not sworn to. There was no law or practice which required either the petition or cross petition to be sworn to.

It is provided by the 13th section of the divorce act, that the defendant shall answer said petition under oath, if required so to do by the petitioner. This section relates to the answer, and not the cross petition. Besides, the petitioner did not require an answer under oath.

It is assumed in the above reason that the dismissal of the complaint and cause by the appellant was partial and conditional. We find in the record which the appellant caused to be made and brought here the following entry: "Comes now the parties, the plaintiff in person and the defendant by Pratt & Ross, her attorneys, and the evidence being closed, the plaintiff dismisses his petition."

We are unable to discover anything either partial or conditional in the above dismissal. It seems to be absolute and unconditional. But it would make no difference whether the plaintiff had or had not dismissed his petition or cause of action, for the court was required by the above quoted sec-

tion to decree the divorce to the party legally entitled to the same.

" 12. The court erred in excluding evidence at said trial of said cause going to sustain plaintiff's allegation of conspiracy as charged in complaint, and granting the divorce to defendant and decreeing alimony on amended cross bill filed after the issues in said cause were joined."

The first branch of the above reason is too general. It does not point out what evidence was excluded. The name of the witness is not given, nor is the substance of what was proposed to be proved stated. The record contains five hundred and fifty-five pages. Neither the court below nor this court should be required to read all the evidence and ascertain what evidence was excluded. Such a general allegation has been held, in a large number of cases, to be too indefinite and uncertain.

The appellee, in the first instance, filed an answer to the original petition. Afterward, by the leave of the court, she filed a cross petition. The appellant, without objection or exception, so far as is shown by the record, filed an answer in denial of the cross petition. The court was fully authorized by the statute and repeated decisions of this court to permit an amendment of the pleadings at any time before the jury retired to consider of their verdict. The whole question of amendment is left by the code to the discretion of the court, and there does not seem to have been any abuse of such discretion. Sec. 99 of the code, 2 G. & H. 118, and the cases referred to in the notes to such section.

" 14. The court erred upon the plaintiff's demand, in not granting a trial by jury, by which the plaintiff was prevented from having a fair trial."

This question has been fully considered in the examination of the seventh, eighth, and ninth reasons for a new trial.

" 15. The court erred in allowing a witness, when upon the witness stand testifying in said cause, to say that plaintiff lied, or 'that's a lie,' in answer to a competent and relevant

question asked said witness, by which plaintiff was prevented from having a fair trial.

"16. It was error in the court to allow the plaintiff's son-in-law, unrestrained, to wit, Rufus Magee, when upon the witness stand testifying in said cause in open court, to swear that plaintiff was then and there insane, and to assault the plaintiff with a heavy stone ink bottle, by which plaintiff was prevented from having a fair trial."

It does not appear by a bill of exceptions or in any other manner in the record, except in the motion for a new trial, that Rufus Magee called the appellant a liar, or said " that's a lie," or that he threw an ink bottle or any thing else at the appellant. Nor is the truth of such allegations supported by affidavit. The insertion of such allegations in the motion for a new trial, without something in the record to show their truth and the circumstances under which they occurred, presents no question for our decision. If the facts were fully set out in a bill of exceptions, we would then determine whether the court had erred. Such things might occur, during the progress of a trial, without the fault of the court. We cannot indulge the presumption that the court knowingly permitted such things to occur in open court.

But it is shown by the bill of exceptions that Mr. Magee, when testifying as a witness, stated that the appellant was then, in his opinion, insane. The statement was made under the following circumstances: The appellant was examining Mr. Magee as a witness, and asked the following questions, to which the following answers were made:

"Ques. You may state what your feelings are toward your father-in-law.

" Ans. Well, Mr. Musselman, that is a hard question to answer.

"Ques. I should think it would be.

" Ans. If you behaved yourself, and acted toward your family as you ought to, my feelings would be very kind.

"Ques. I am not asking that; I call on the court to at least give me the benefit of the rules.

"The Court (to witness). The real question is not, whether you have any cause for your feelings, but what your feelings are.

"Ans. Well, when I think Musselman is insane, my feelings are more of pity and charity; when I think he is not, I have no kind feelings toward him.

"Ques. That is so indefinite, I will now ask you whether you think I am insane or otherwise.

"Ans. I think you are insane.

"Ques. At the present time?

"Ans. Yes, at this very moment.

"Ques. You, then, do think I am insane at the present time?

"Ans. Yes sir."

The appellant introduced into his petition the question of his sanity. There had been much testimony upon the question before Mr. Magee was called to the stand as a witness. When asked what his feelings were toward Mr. Musselman, he said, when he thought him insane his feelings were those of pity and charity, but when he thought him sane, he had no good feeling for him. The appellant, by his pressing and persistent questions, called out the opinion of the witness, that he then considered him insane. We are unable to see how the court is chargeable with any blame. The only time the court was appealed to, its decision was in favor of appellant.

The seventeenth reason calls in question the correctness of the ruling of the court in suppressing certain questions and answers in a deposition. The portions stricken out had no kind of relevancy or connection with any issue in the case. There was not in the court below, nor is there here, any pretence, that there was any truth in or foundation for the report spoken of, or that the appellee had any knowledge of or connection therewith. The matter spoken of occurred when the appellant and appellee were living together as husband and wife. The learned judge who presided at the trial would have been derelict in his duty, if he had permitted the appel-

lant to introduce in evidence an unfounded report that had no connection with the case, and which could only have brought before the public the names of persons who had lived pure and blameless lives. The action of the court was eminently just and proper and receives our entire approval.

" 18. The court erred in smoking, and permitting Hon. D. D. Pratt and other attorneys to smoke, in open court and during the trial of said cause, by which the plaintiff was prevented from having a fair trial."

The above does not deserve much consideration. It does not appear that the appellant objected to smoking in court, or that it had any injurious effect upon him. We cannot see how smoking in court prevented him from having a fair trial.

" 19. The court erred in sleeping, or sitting with his eyes closed, in open court, during the reading of the written evidence upon the part of the plaintiff, in said cause, at the trial of said cause, by which the plaintiff was prevented from having a fair trial."

The above reason for a new trial is very vague and indefinite. If the appellant, who was personally present in the court, was unable to determine whether the judge was really asleep or only had his eyes closed, how are we to determine? It is said to have occurred while the appellant was reading his written evidence. If he had reason to suppose that the judge was indulging in a gentle doze after dinner, he should have suspended his reading, or awakened the judge. Nor does it appear what portion of the written evidence was being read. There was much of it wholly immaterial and irrelevant. We might reasonably conclude that the judge but imitated the example of many of the profoundest thinkers and most distinguished judges, and closed his eyes that he might hear the more accurately and more fully comprehend what he heard.

" 20. Misconduct of the court and prevailing party, by which plaintiff was prevented from having a fair trial."

The above is a combination of the first and second rea-

Musselman *v.* Musselman.

sons for a new trial, and for the reasons stated in passing upon such reasons, we hold that it presents no question for our decision.

"21. It was error for the court allowing the defendant to withdraw the second paragraph of answer containing cross complaint sworn to, and allowing the defendant to file amended cross petition, over the plaintiff's exception, said cross petition containing a prayer for alimony and attorney's fees, and awarding alimony and two thousand dollars fees to Messrs. Pratt and Ross, defendant's attorneys, upon the testimony of Judges Dykeman and Daniel P. Baldwin, both relatives of said Pratt, the said Baldwin being the judge of the Cass court of common pleas, by which plaintiff was prevented from having a fair trial."

The first branch of the above reason has already been disposed of in the examination of the 12th reason for a new trial. There is no question that is better understood by the profession of the State, or more firmly established by repeated decisions of this court and the uniform practice in the lower courts, than the question of amendment. There is no shadow of a pretext for complaining of the ruling of the court on this point.

The second branch of the above does not constitute a valid reason for a new trial. The question sought to be raised will, however, be considered hereafter.

Having thus gone through the examination of the errors alleged to have occurred prior to the finding of the court, we proceed to the consideration of errors claimed to have been committed by the court after the finding of the court for the appellee, and will dispose of the remaining reasons for a new trial in their inverse order.

"13. The court erred in allowing, as part of its judgment in this case, the fees for the attorneys for defendant, Pratt and Ross."

The power of the court to make an allowance to attorneys for services rendered a wife in an action for a divorce is called in question. This should no longer be regarded as

an open question.   It is expressly authorized by the statute, and has been squarely decided by this court.   The seventeenth section of the act regulating divorces reads as follows:

"Pending a petition for divorce, the court, or the judge thereof in vacation, may make, and by attachment enforce such orders for the disposition of the persons, property and children, of the parties as may be deemed right and proper, and such orders relative to the expenses of such suit as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof, and on decreeing a divorce in favor of the wife, or refusing one on the application of the husband, the court shall, by order, to be enforced by attachment, require the husband to pay all reasonable expenses of the wife in the prosecution or defence of the petition when such divorce has been so granted or refused."

This court in the case of *Harrell* v. *Harrell,* 39 Ind. 185, uses the following language:

"The above section contains two separate and distinct propositions.   The one is, that 'pending a petition for a divorce, the court, or the judge thereof in vacation, may make, and by attachment enforce, such orders for the disposition of the persons, the property, and children of the parties as may be deemed right and proper, and such orders relative to the expenses of such suit as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof.'

"The other proposition is, that 'on decreeing a divorce in favor of the wife, or refusing one on the application of the husband, the court shall, by order, to be enforced by attachment, require the husband to pay all reasonable expenses of the wife in the prosecution or defence of the petition when such divorce has been so granted or refused.'

"The first allowance provided for has to be made while the action is pending, and only to such an amount 'as shall insure to the wife an efficient preparation of her case and a fair and impartial trial thereof.'

" The second allowance is to be made after a divorce has been decreed in favor of the wife, or refused on the application of the husband, and shall be for a sum sufficient ' to pay all reasonable expenses of the wife in the prosecution or defence of the petition.'

" It is made the imperative duty of the court, in decreeing a divorce to the wife, or refusing one to the husband, to make an allowance sufficient to cover all reasonable expenses of the wife in the prosecution or defence of the action. The language of the statute is, that the court shall make such orders, etc."

There being no doubt as to the power and duty of the court to make the allowance, we must inquire whether the allowance itself was justified by the evidence. Judge Dykeman testified that the services rendered by Pratt and Ross in this case were reasonably worth two thousand dollars.

Judge Baldwin testified that such services were worth from fifteen hundred to two thousand dollars.

They both testified that they were nephews of Mr. Pratt. There was no other evidence as to the value of the services of the attorneys for appellee.

If the appellant believed that such witnesses had placed too high a value upon such services, he should have called other witnesses as to such value. His failure to do so should be regarded as an admission that the value stated was reasonable.

There was no error in such allowance.

"6. The judgment of the court and decree for alimony is contrary to law."

Under this reason for a new trial, it is gravely contended by the appellant that the court possessed no power to decree alimony absolutely to the wife, but that the court can make an allowance to her in the nature of an annuity or for her maintenance during life; and reference is made to several cases in Kentucky as holding that doctrine.

The question is solely and exclusively regulated by our

statute. The nineteenth and twenty-second sections of the act regulating the granting of divorces read as follows:

" Sec. 19. The court shall make such decree for alimony in all cases contemplated by this act as the circumstances of the case shall render just and proper.

" Sec. 22. The decree for alimony to the wife shall be for a sum in gross, and not for annual payments; but the court, in its discretion, may give a reasonable time for the payment thereof, by instalments, on sufficient surety being given."

It has been several times decided by this court that the decree for alimony must be for a sum in gross, and not for a certain share of real estate. It is an absolute personal judgment, which is collected by execution as other judgments, and when collected belongs absolutely to the wife, and is in lieu and bar of her interest in the real and personal estate of her husband. *Rice* v. *Rice*, 6 Ind. 100; *Green* v. *Green*, 7 Ind. 113; *Rourke* v. *Rourke*, 8 Ind. 427; *Stafford* v. *Stafford*, 9 Ind. 162; *Hart* v. *Hart*, 11 Ind. 384; *Chandler* v. *Chandler*, 13 Ind. 492; *Cox* v. *Cox*, 25 Ind. 303; *Coon* v. *Coon*, 26 Ind. 189; *Conner* v. *Conner*, 29 Ind. 48; *Hyatt* v. *Hyatt*, 33 Ind. 309.

" 5. The judgment of the court and decree for alimony is not sustained by sufficient evidence."

We do not deem it necessary to set out the causes assigned for a divorce or a summary of the evidence, as no useful purpose could be accomplished thereby. The evidence covers nearly five hundred pages of the record. It has been read and duly considered, and we entertain no doubt that the court was not only justified but required by the evidence to decree the appellee a divorce upon her cross petition. We cannot disturb the finding of the court upon the evidence, for the reasons stated in *The Madison, etc., Railroad Co.* v. *Taffe*, 37 Ind. 361.

This leaves for our examination the third and fourth reasons for a new trial, and they are,

" 3. Excessive award by the court of judgment for alimony.

"4. Error in the court in the assessment of the amount of the recovery on divorce granted on amended cross petition of defendant."

There is in this State no fixed and certain rule as to the allowance of alimony. It is provided by statute, that "the court shall make such decree for alimony in all cases contemplated by this act as the circumstances of the case shall render just and proper." 2 G. & H. 353 ; *Bush* v. *Bush,* 37 Ind. 164. This leads us to inquire, what are the "circumstances" of the present case ? The appellant and appellee were married when they were young. They commenced life poor. The property of the appellant is the result of their united efforts. They lived together as husband and wife about thirty years. They have two daughters, one married and the other single; the latter was by the decree of the court placed in the custody and under the control of the mother. The court decreed the appellee alimony to the amount of thirty thousand dollars, and set apart for the support and education of the unmarried daughter the sum of three thousand dollars. The court was imperatively required, upon decreeing the divorce, to make provision for the guardianship, custody, and support and education of the minor children of such marriage. 2 G. & H. 353 ; *Bush* v. *Bush, supra,* and cases there cited. The appellant earnestly contends that the sum allowed for alimony is excessive. This renders necessary an inquiry into the pecuniary circumstances of the appellant. Upon this point there was much diversity of opinion among the witnesses, and this applies to the witnesses called by the same party. We have gone through the testimony upon this point, and will, without going into detail, state results reached by the several witnesses. We will in the first place refer to the testimony offered by the appellee. Judge Dykeman places the property of the appellant at one hundred and thirty-three thousand and three hundred dollars. In this estimate, he did not include what is known as the Methodist Church property, the value of which is shown by the testimony of

the other witnesses to be from seventeen thousand dollars to twenty-two thousand dollars.

The estimate of Mr. Allen Richardson is one hundred and twenty-nine thousand dollars, and this did not include his personal property, which was variously estimated from fourteen thousand to twenty thousand dollars.

According to the judgment of John D. Meeks, the property of the appellant was worth one hundred and forty-five thousand dollars.

George E. Adams, without including the personal property or out-lot 17, considered his property worth one hundred and twenty-three thousand and eight hundred dollars.

Mr. N. S. LaRose was of opinion that the property of the appellant was worth one hundred and twenty-five thousand dollars.

The following testimony was offered by appellant:

W. W. Haney estimated appellant's property, not including personal property, the lot adjoining opera house, or another piece of property valued at about three thousand dollars, at the sum of ninety thousand and seven hundred dollars. Add to this personal property, fifteen thousand dollars; lot adjoining opera house, seven thousand five hundred dollars; and other property, three thousand dollars; and Mr. Haney's estimate would be about one hundred and twenty-five thousand dollars.

Mr. T. R. McElheny, without including personal property or lot adjoining opera house, half of lot 17, or the house designated as where Frank lived, placed the value at forty-eight thousand five hundred dollars. This witness valued the opera house at twenty thousand dollars, while the weight of the evidence showed that it was worth forty thousand dollars.

Dr. James M. Justice, without including personal property, placed the value of the property at ninety-four thousand dollars.

Mr. T. S. Manly, without including personal property,

valued the real estate at ninety-four thousand and three hundred dollars.

There were several other witnesses called, who placed a value on a part of his property.   There was evidence tending to show that appellant owned about fifteen hundred acres of land in White county, and several hundred acres in Marshall county, but the value of such lands was not clearly shown.   There was some evidence as to incumbrances, but not very satisfactory.   It was also shown that appellant had conveyed to Rufus Magee, in trust for Maggie Musselman, some valuable property which was included by the witnesses, but from the character of the conveyance and all the attending circumstances as shown by the evidence, we do not think there should be much, if any, deduction made in consequence of such deed.   It is shown, by a very decided preponderance of the evidence offered by the appellant, that his property is worth all of one hundred thousand dollars, while it is shown by the evidence offered by the appellee, without including his outside lands, that he was worth from one hundred and twenty-five thousand to one hundred and fifty thousand dollars.   There seems to be no doubt that he was worth one hundred and twenty-five thousand dollars.   The decree of divorce deprived Mrs. Musselman of all interest in his real estate and personal property.   Where the wife, by her industry and economy, has contributed to the accumulation of the property, and where the divorce has been granted to her on account of the misconduct of the husband, the rule is, that she should not be placed in a worse condition than if she had survived her husband; otherwise the husband would be permitted to take advantage of his own wrong. The sum allowed as alimony is not equal to one-third the value of the property of the appellant.   We do not regard the alimony as excessive.

Other questions have been argued, but as they were not assigned as reasons for a new trial, they cannot for the first time be raised in this court.   This is the settled rule, not only in this, but in all other appellate courts.

When the appellant dismissed his petition, he waived and abandoned a large number of the questions that we have considered, but we have considered and decided all the reasons assigned for a new trial.

The judgment is in all things affirmed, with costs.

WORDEN, J., was absent and took no part in the decision of the case.