## CHENEY v. STATE, EX REL. RISK.

[No. 20,299. Filed June 9, 1905.]

1. STATUTES.—"*Notice.*"—*Meaning of.*—The word "notice" in the act of 1903 (Acts 1903, p. 360), providing for the publication of certain notices, must be construed, in accordance with §240 Burns 1901, §240 R. S. 1881, providing that "words and phrases shall be taken in their plain, or ordinary and usual sense," to mean intelligence, knowledge or information. p. 123.

2. SAME.—*Public Allowances.*—"*Notices Affecting County Affairs.*"—The act of 1903 (Acts 1903, p. 360), providing for the publication of all "notices affecting county affairs," includes the publication of all allowances payable out of the county treasury. p. 123.

3. SAME.—*Construction.*—*Former Statutes.*—The plain and evident meaning of "notices affecting county affairs" in the act of 1903 (Acts 1903, p. 360), providing broadly for the publication of all such notices, can not be limited or cut down by reference to the specific and explicit use of the word "notice" in the county reform act (§5594e2 Burns 1901, Acts 1899, p. 343, §51). p. 124.

4. SAME.—*Construction.*—*Former Statutes.*—The act of 1903 (Acts 1903, p. 360), providing for the publication of all "notices affecting county affairs," can not be limited, so as not to include the allowances payable out of the county treasury, for the reason that the statute (§7852 Burns 1901, Acts 1899, p. 415) prescribes a maximum charge of five cents for each allowance in any one newspaper, since the result is that the maximum price of five cents for each allowance may be made for each publication. p. 125.

5. SAME.—*Construction.*—*When Unnecessary.*—Where the language of a statute is plain there is no room for construction. p. 125.

6.  STATUTES. — Construction. — Former Statutes. — Prior enact-
ments may be resorted to in order to solve but not to create an
ambiguity.  p. 125.

7.  TRIAL.—Motion to Strike Out.—Error can not be predicated
on the overruling of a motion to strike out parts of a pleading.
p. 126.

8.  MANDAMUS.—County Auditors.—Publication of Allowances.—
A county auditor may be compelled by mandate to publish the
lists of allowances, payable out of the county treasury, in two
newspapers, as provided by statute (Acts 1903, p. 360).  p. 126.

From Superior Court of Tippecanoe County; H. H. Vin-
ton, Judge.

Action by the State of Indiana, on the relation of James
K. Risk, against Harvey H. Cheney as county auditor of
Tippecanoe county.  From a judgment for plaintiff, defend-
ant appeals.  Affirmed.

George D. Parks, for appellant.

Stuart, Hammond & Simms and Thomas W. Field, for
appellee.

GILLETT, J.—This was a proceeding by way of mandate.
The question involved is whether it is the duty of the county
auditor, under the act of March 9, 1903 (Acts 1903, p.
360), to publish in two newspapers the lists of allowances
which §7852 Burns 1901, Acts 1899, p. 415, required to be
published in one newspaper; or, in other words, the question
is whether the act of 1903 relates to such notices or state-
ments.

Section 7852, supra, is as follows: "That the auditor of
each county in the State shall be required to publish in a
newspaper of a general circulation in his county, within ten
days after the adjournment of any term of circuit, superior,
criminal or commissioners' court, all allowances made by
the regular or special judges thereof, and by the board of
county commissioners at each term of court at which any
allowance is made.  All allowances made by the judges of
such courts and by the board of county commissioners, to
whom made, and for what purpose.  Provided, that the cost
of printing thereof shall not exceed five cents for each allow-

ance." It is provided by section one of the act of 1903, *supra:* "That in all cases wherein the auditors and treasurers of the several counties of this State are required by law to publish notices affecting county affairs in a public newspaper, said auditors and treasurers are hereby required to publish said notices as by the several statutes required, and in two leading newspapers published in their respective counties, representing the two political parties casting the highest number of votes in such counties respectfully [respectively] at the last preceding general election, if there shall be such newspapers published in said county."

The Standard Dictionary defines the word "notice" thus: "Intelligence, by whatever means communicated; knowledge given or received; information; intimation; warning." Anderson's Law Dictionary states that "notice," "in its untechnical sense, is equivalent to information, intelligence, knowledge." This court made use of like definitions in defining the word in *White* v. *Fleming* (1888), 114 Ind. 560, 573.

Section 240 Burns 1901, §240 R. S. 1881, provides: "Words and phrases shall be taken in their plain, or ordinary and usual sense." This court declared in *Massey* v. *Dunlap* (1896), 146 Ind. 350, 357: "One of the cardinal rules in the construction of statutes is, that where there is nothing in the act itself to indicate that a word, or phrase, is used in a particular, or technical, sense, it is to be taken or accepted in its ordinary and popular meaning." See, also, *Spaulding* v. *Harvey* (1856), 7 Ind. 429; *Rourke* v. *Rourke* (1857), 8 Ind. 427. In this case the technical meaning of the word is such that the context of the statute forbids the view that it was used in that sense.

We have not searched for border-land definitions of the word, but have referred to its plain and ordinary meaning. Bearing in mind that the obvious purpose in the requirement of the act of 1899, *supra,* was to secure publicity concerning allowances, such a publication

must be regarded as a notice. Indeed, the word as used in the act seems to be expanded, if that be possible, by the context, since the subject-matter of the enactment is notices required by law "affecting county affairs." How it can be said that the publication of lists of allowances payable out of the county treasury, where such publications are made pursuant to law for the purpose indicated, are not "notices affecting county affairs," we are unable to perceive.

Appellant's counsel argues that it appears that the legislature did not refer in the act of 1903, *supra,* to the publication of the list of allowances required to be made by the act of March 4, 1899, *supra,* because that act uses the word "statement," and he also calls attention to the fact that section fifty-one of the county reform act (Acts 1899, p. 343, §5594e2 Burns 1901), which was approved March 3, 1899, makes provision concerning cases where a "notice, report or statement" is required by law to be published. The act of 1899 concerning the publication of allowances related to a single subject-matter, namely, allowances, and it was only apt to refer in said act to the auditor's publication as a "statement," while in the act of 1903 the subject-matter was much broader, and the more general words, "notices affecting county affairs," were used. The use of the words "notice, report or statement" in the county reform act affords no sufficient basis for the conclusion that the legislature used the word "notices" in other than the ordinary sense in the act of 1903. The county reform act was one which was prepared, at least, for the most part, with great circumspection, and the language of section fifty-one thereof was evidently drafted with a studied purpose to cut off publications in more than one newspaper, hence the degree of specificness in said section. It is not significant that the lawmakers adopted a more general form of expression in the act of 1903. Having used words of no uncertain meaning, the act is not to be cut down by the considera-

tion that a previous act contained more explicit language. "The framers of laws do not weigh only the force of single words, as philologists and critics, but of whole clauses and designated objects, as statesmen and practical reasoners. In common language the same word has often various meanings." Potter's Dwarris, Statutes, 196. As stated by Vattel: "Words and expressions have a different force, sometimes even a quite different signification, according to the occasion, their connection, and their relation to other words." Vattel, Law of Nations, *254.

It is further argued by appellant's counsel that the act of 1903, *supra,* could not have referred to the lists of allowances which the auditor is required to publish, because the cost thereof was limited by the act of 1899 (Acts 1899, p. 415, §7852 Burns 1901) to five cents for each allowance. That being the maximum fixed for publication in one newspaper, it simply results that upon the enactment of a law providing for a publication in two newspapers it is lawful to pay five cents for each allowance for each publication required.

We have attempted to show that the reasons assigned on appellant's behalf for a narrowing of the act of 1903, *supra,* are not of any real weight, but as the act under review is plain, we do not think that it is really a case for construction. Where the language of a statute is clear and unambiguous, it must be held to mean what it plainly expresses. 2 Lewis's Sutherland, Stat. Constr., §367; Endlich, Interp. of Stat., §4.

The whole effort of appellant's counsel has been expended in the endeavor to create an uncertainty in the act of 1903, not from the words of the act, but from a consideration of prior enactments. To adopt this reasoning would be a violation of the rule above stated. As laid down by the Supreme Court of the United States, in *Hamilton* v. *Rathbone* (1899), 175 U. S. 414, 421, 20 Sup. Ct. 155, 44 L. Ed. 219: "The whole doctrine applicable to

the subject may be summed up in the single observation that prior acts may be resorted to, to solve, but not to create, an ambiguity."

Complaint is made of the overruling of a motion filed by appellant to strike out parts of the alternative
7. writ of mandate. Such a ruling does not constitute prejudicial error.

The peremptory writ was properly issued, and the
8. judgment is affirmed.