STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant,

v.

Shirley C. THOMPSON, Appellee.

No. 20178.

United States Court of Appeals
Ninth Circuit.

Jan. 24, 1967.

Kenneth S. Scoville, Leroy W. Hofmann, Phoenix, Ariz., for appellant.

Robert D. Myers, of Langerman, Begam & Lewis, Phoenix, Ariz., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge:

Shirley C. Thompson was injured on August 4, 1959, at Scottsdale, Arizona, while riding as a passenger in an automobile driven by Joel Bailleres. On March 13, 1962, she obtained an Arizona state court judgment against him for damages resulting from the accident. The award was $32,658.50, including costs. Mrs. Thompson then brought this suit against State Farm Mutual Automobile Insurance Company to recover, up to the policy limit, under a policy of automobile liability insurance issued by the company, in which policy Joel Bailleres was an "additional insured" at the time of the accident.

The policy of insurance was in the amount of $10,000 for each person and $20,000 for each accident, together with court costs and interest. Mrs. Thompson sued State Farm Mutual for $10,158.50, plus interest at the rate of six per cent per annum on $32,500 from March 13, 1962.

In its answer, the company asserted several defenses, only two of which are material here. One of these defenses was based on a provision of the policy excluding liability for bodily injury to the insured or any "member of the family of the insured residing in the same household as the insured." Defendant alleged that, at the time of the accident, Mrs. Thompson was a member of the family of Joel Bailleres residing in the same household as Bailleres. The second defense was that Joel Bailleres failed to fulfill a condition of the policy requiring him to cooperate with the company in any damage suit brought against him arising out of an automobile accident covered by the policy.

Plaintiff moved for summary judgment. In her memorandum filed in support of this motion plaintiff countered the first defense referred to above by submitting affidavits and a document which, plaintiff asserted, incontrovertibly established that she was not a member of Joel Bailleres' family at the time of the accident. As for the non-cooperation defense, plaintiff relied upon an Arizona statute, A.R.S. § 28–1170, subsec. F as eliminating such a defense in that state. Defendant filed a cross motion for summary judgment.

The district court granted plaintiff's motion for summary judgment and entered judgment for plaintiff in the sum of $5,000 plus interest on that sum from March 13, 1962.[1] Defendant alone appeals.

The granting of plaintiff's motion for summary judgment, and the entry of judgment in her favor, represents a district court holding that, under the undisputed facts, Shirley C. Thompson was not a member of the family of Joel Bailleres residing in the same household as Bailleres on August 4, 1959, when the accident occurred. Defendant contends that the district court erred in so ruling.

The essential undisputed facts, substantially as set out in appellant's brief, are as follows: prior to August 4, 1959, Mrs. Thompson resided in an apartment in Scottsdale, Arizona. She was then married to, but separated from, John F.

1. In awarding a judgment for $5,000 instead of the policy limit of $10,000, the court accepted the company's view that if the defense of non-cooperation is precluded by A.R.S. § 28–1170, subsec. F, it is precluded only as to the first $5,000 of the policy of insurance which is the minimum amount of coverage required by the Arizona Financial Responsibility laws. The court also accepted defendant's view that the interest award could not exceed interest on this $5,000 limit.

Thompson. However, she then erroneously believed that her marriage to Thompson had been finally terminated by a final divorce and that she was under no legal disability which would prevent her entering into another lawful marriage.

Over the weekend of August 1 and 2, 1959, Mrs. Thompson and Joel Bailleres traveled together to Nogales, Mexico, with the intent and purpose of getting married to each other. However, she became intoxicated on the trip and does not remember the marriage ceremony. The two registered at a hotel in Nogales as husband and wife. While so registered, they resided in the same room at the hotel and engaged in sexual relations.

They returned together to Scottsdale, Arizona, and Bailleres took up residence in the same household as Mrs. Thompson. They resided together in the same apartment from then until August 4, 1959, living as husband and wife. They prepared their meals together and ate together. Mrs. Thompson told some of her friends that she and Bailleres were married.

On August 4, 1959, after the couple had dined together in their apartment, they went next door to a friend's house to watch television. Around 10:00 or 10:30 p. m. they went to the Wagon Wheel bar. Later that evening the accident occurred.

After the accident, Mrs. Thompson was hospitalized. She told the nurses that she was married to Bailleres. When she was ready to leave the hospital, Bailleres picked her up and took her to their apartment where they continued to live together as husband and wife for another month and a half. Bailleres then told Mrs. Thompson that they were not really married in Mexico, and they separated.

Under the facts there can be no question but that, at the time of the accident, Mrs. Thompson was residing in the same household as the insured, within the meaning of the exclusion clause. But the exclusion does not apply unless, at the same time, she was a member of the family of the insured. Contending that she was, and that the district court erred in holding otherwise, the insurance company relies primarily on these circumstances: The two, although not legally married, were living together as husband and wife; they took their meals together, had sexual relations, and Mrs. Thompson introduced Bailleres to others as her husband.

While, in a sense, the facts show the existence of a "family" arrangement of sorts, the question remains whether it was enough to constitute Mrs. Thompson a member of Bailleres' "family," within the meaning of the exclusion clause. The term "family," which is not defined in the policy, is at best imprecise and having in view the possible meanings which may be given to it, may fairly be said to be ambiguous. Arizona follows the universal rule that where an insurance policy is ambiguous or susceptible of two constructions, that construction will be given it which is most favorable to the insured.[2]

The obvious purpose of a "family" exclusion clause is to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 862, 864, 50 A.L.R.2d 108. As stated in the opinion in that case, the words used should be given that meaning which they ordinarily would have in order to effectuate the purpose of the exclusion.

Since this is a diversity suit, the question of whether, within the meaning of the policy, Mrs. Thompson was a member of Bailleres' family is to be determined in accordance with Arizona law. However, there are no Arizona state court decisions construing such an exclu-

2. A. J. Bayless Markets, Inc. v. Ohio Casualty Ins. Co., 55 Ariz. 530, 104 P.2d 145. See, also, Dickerson v. Hartford Accident & Indemnity Co., 56 Ariz. 70, 105 P.2d 517, 519; Prudential Insurance Company of America v. Barnes, 9 Cir., 285 F.2d 299, 300, a diversity suit arising in Arizona.

sion clause. The parties have therefore properly called our attention to decisions rendered elsewhere. But while several of them involve the same exclusion clause, their facts are so at variance with those of our case that we have not found these decisions particularly helpful.

The insurance company relies primarily on State Farm Mutual Automobile Insurance Co. v. James, 4 Cir., 80 F.2d 802, and Hunter v. Southern Farm Bureau Casualty Ins. Co., 241 S.C. 446, 129 S.E. 2d 59.

The *James* case is of no assistance because the exclusion clause there in question did not include the word "family." Instead, it read: " * * * other than the assured or persons in the same household as the assured or those in the service or employment of the assured."

The *Hunter* case involved an exclusion clause identical with that contained in the policy before us. In *Hunter*, while the insured share cropper and the person who was killed in the accident had never been married,[3] they had been living together as man and wife continuously for about six years prior to the accident. During this time they had three children. In holding that the exclusion applied, the court said, 129 S.E.2d at page 61:

"In the light of the clear purposes intended to be accomplished by the exclusion clause in question, we think that the term 'family,' as here used, includes 'such persons as habitually reside under one roof and form one domestic circle.' Johnson v. State Farm Mutual Automobile Ins. Co., 8 Cir., 252 F.2d 158. If the injured person is a member of such family circle, liability of the insurer is excluded.

"The moral or legal standards violated by the relationship of the insured and the intestate are not involved.

The intestate and the insured lived under the same roof as man and wife. Children were born of this relationship. The insured testified that they had lived together in the same home as man and wife for a period of about six years, giving to the relationship a permanent domestic character. The intestate was clearly a member of the insured's domestic circle."

In *Hunter*, the insured and the woman who was killed habitually formed one domestic circle giving the relationship, as the court said, "a permanent domestic character." This cannot be said of the very brief and temporary arrangement between Bailleres and Mrs. Thompson, as it existed on August 4, 1959. They had been living together less than a week when the accident occurred. Bailleres apparently knew all along that they were not legally married. While Mrs. Thompson thought that they were married, she did not intend to live with him unless they were, and she separated from him when she learned the truth. The relationship between them did not have a permanent domestic character, such as would be apt to make Bailleres partial to her in the event of litigation such as this.

This court accords great weight to the determination as to the law of a particular state, made by a district judge sitting in that state. Citrigno v. Williams, 9 Cir., 255 F.2d 675, 679. Under the facts and law, as reviewed above, we are convinced that the district court in this case did not err in concluding that, under Arizona law, Mrs. Thompson was not a member of Bailleres' family at the time of the accident, within the meaning of the insurance policy in question. The court therefore correctly rejected the defense premised upon the exclusion clause.[4]

---

3. The insured, in fact, had a living wife from whom he had been separated for twelve or thirteen years, and by whom he had also had children.

4. In the foregoing discussion we do not mean to imply that Arizona would recognize a relationship not based on blood, marriage or adoption as constituting a "family" under such an exclusion clause. All we say is that if Arizona would not so limit the concept of family it would, in any event, stop short of recognizing as a "family," the relationship between Bailleres and Mrs. Thompson as it existed on the date of the accident.

This brings us to the insurance company's second defense, based on the policy condition that Bailleres cooperate in the defense of the damage suit.[5]

Mrs. Thompson argues that the evidence fails to show, conclusively, that Bailleres failed to cooperate, and also argues that there are no findings of fact on the question of cooperation.

■ In its answer to the complaint the insurance company affirmatively alleged that Bailleres had failed to fulfill his obligations under the cooperation condition. In response to the company's motion for summary judgment, Mrs. Thompson did not in any way deny this allegation. The allegation therefore established the fact for the purposes of the motion for summary judgment. Findings of fact are unnecessary in disposing of a case on summary judgment. However, the fact that the district court accepted, as an established fact, Bailleres' non-cooperation, is indicated by the amount of the award—$5,000, the Financial Responsibility Act limit, rather than $10,000, the actual limit of the company's policy.

■ Mrs. Thompson further contends that the defense of non-cooperation has been eliminated in the State of Arizona by the provisions of A.R.S. § 28–1170, subsec. F.[6] The district court agreed with this view, holding that to the extent of the limits required by the Arizona Financial Responsibility law, "non-cooperation" is no longer a valid defense in Arizona with regard to a policy of the kind now before us.

We agree with this view. A.R.S. § 28–1170 pertains to any "motor vehicle liability policy," as defined in subsec. A of that section. As therein defined, such a policy is an owner's or an operator's policy of liability insurance, certified as provided in A.R.S. § 28–1168 or § 28–1169, as proof of financial responsibility. It is established that the policy now before us is not of this kind, but is a voluntary policy relating to liability for future accidents.

However, in Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145, it was held that the omnibus clause in A.R.S. § 28–1170, subsec. B, par. 2, is to be considered a part of every insurance policy issued in the State of Arizona and that an insurer cannot limit its liability contrary to its terms. In so ruling, the Supreme Court of Arizona refused to distinguish between voluntary and certified policies of insurance in applying the mandatory omnibus clause. Under this ruling, which is binding upon us, the provisions of A.R.S. § 28–1170, subsec. F must be considered a part of the policy involved in this case.⃰

This precise question concerning availability of the non-cooperation defense under a similar insurance policy, was presented in Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129, decided on December 28, 1966. In that case the Supreme Court of Arizona did not reach that question since it determined that the insurance company there involved had not established lack of cooperation. Justice Bernstein dissented on the ground that the court should have reached the

---

5. This condition reads:
   "3. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and upon its request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

6. Section 28–1170, subsec. F reads, in pertinent part:
   "F. Every motor vehicle liability policy shall be subject to the following pro-

visions which need not be contained therein:
   "1. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy."

question of whether the non-cooperation condition is a defense in such a policy, and that while the *Mayflower* decision, referred to above, requires a determination that an insurance company may not assert a "non-cooperation clause" defense, that case was wrongly decided and should be overruled.

 In Justice Bernstein's dissent the reasons why the *Mayflower* case, if left standing, destroys the non-cooperation defense under a policy such as the one now before us, are fully set forth. This part of the dissent is not contrary to the majority holding. We accept this statement of reasons in support of our similar conclusions stated above. Needless to say, we must accept the *Mayflower* pronouncement as long as it states the law of Arizona, and may not inquire as to its correctness. If *Mayflower* is to be overruled it must be by the Supreme Court of Arizona. While the company suggests that a due process question is involved in holding that Arizona law deprives the company of the non-cooperation defense, we do not agree. See, also, Weekes v. Atlantic National Insurance Co., 9 Cir., 370 F.2d 264, decided December 20, 1966.

Affirmed.