LEE EADS, SHERIFF, ETC. *v.* J. & J. SALES CORPORATION.

[No. 1271S351. Filed December 6, 1971.

Rehearing denied January 20, 1972.]

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellants.

*Arthur J. Sullivan, Steers, Klee, Jay & Sullivan,* of Indianapolis for appellee.

DeBruler, J.—An appeal in this case was taken to the Indiana Appellate Court which rendered an opinion reported as *Eads, etc.* v. *J. & J. Sales Corp.* (1971), 269 N. E. 2d 888, affirming the trial court judgment. The appellants below have petitioned this Court for transfer, which petition is now granted and the opinion and order of the Appellate Court is now ordered vacated.

Appellee-plaintiff sought a permanent injunction prohibiting appellants, The Indianapolis Police Department, Marion County Sheriff's Department and the Indiana State Police from interfering with appellee's maintaining and operating certain pinball machines. In order to obtain such an injunction appellee had to show it had property rights in such machines and that they were not "gambling devices" within the meaning of I.C. 1971, 35-25-1-2, being Burns § 10-2330(4). *Peachey* v. *Boswell* (1960), 240 Ind. 604, 167 N. E. 48; *Tinder* v. *Music Operating Co.* (1957), 237 Ind. 33, 142 N. E. 2d 610. The trial court found for the appellee and issued a permanent injunction prohibiting appellants from interfering with appellee's maintaining, possessing, leasing and operating pinball machines on which the sole mechanism for registering rights to replay is a meter on the front of the machine visible to the player.

Appellants' contention on appeal is that the evidence showed that appellee's machines were "gambling devices" within § 10-

2330 (4), and, therefore appellee did not have a property interest in the machines sufficient to justify the issuance of an injunction restraining the appellants from confiscating the machines in the course of their duties.

At the time of the trial, § 10-2330 (4) read in part as follows:

"(4) 'Gambling device' means any mechanism by the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance. . . . Provided, That in the application of this definition an immediate and unrecorded right to replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed to be without value."

In *Peachey* v. *Boswell, supra,* this Court held that under that statute pinball machines awarding rights to replay are gambling devices unless they come within the proviso to § 10-2330 (4) and only confer "immediate and unrecorded" rights to replay. The sole issue in this case is whether Appellee's machines "recorded" the rights to replay within the meaning of this statute.

The parties stipulated that Exhibits 1 and 2 were the type of machines handled by appellee in its business and there was no dispute over the way the machines operated. The player inserts a nickel or a dime, depending on how the machine is set up, and receives the right to play one game consisting of five balls. If the player obtains a certain score on those five balls he wins a certain number of free games or "rights to replay." The number of rights to replay are registered on a meter on the front of the machine visible to the player. After the player has completed the game of five balls he can look at the meter and see how many games he has a right to play. The number on the meter is reduced by one each time the player plays another game. The meter records rights to free games as well as rights to any pre-paid games obtained by inserting more than the amount required for one game.

The test to determine whether this replay meter is a recording device within the meaning of § 10-2330(4) was set out in *Peachey* v. *Boswell, supra,* as follows:

> "The clear intent of the Legislature was to prohibit the use and 'maintaining' of pinball machines which are equipped with recording devices that may be used to compute 'payoffs'." 240 Ind. at 614.

Under that test appellee's machines are clearly "gambling devices" because they record the rights to replay in a way that may be used to compute pay-offs. The meter on the front records the number of rights to replay which the machine confers and that record is visible after the player has completed play on the five balls which make up each game. The number remains visible until the player starts another game. That record on the meter obviously "may be used to compute payoffs" from the location owner for games won and, therefore makes the machine a gambling device within § 10-2330(4) as construed by *Peachey* v. *Boswell, supra.*

The appellee's basic strategy in this case has been to focus attention on certain characteristics of Exhibits 3 and 4, pinball machines concededly illegal as gambling devices, and infer the legality of Exhibits 1 and 2 because of the absence of those characteristics. We do not accept this as the proper approach to this case. We must determine whether Exhibits 1 and 2 are legal by seeing if they comply with the statute and not by seeing how different they are from other admittedly illegal machines. Although we do not accept appellee's basic approach we will deal with appellee's specific arguments.

Exhibits 3 and 4 are "bingo" type pinball machines which give five balls for a dime and also permit the odds of winning free games to be altered by inserting more coins. This type of machine has three meters or recording devices: (1) the replay meter on the front of the machine; (b) the total play meter located inside the machine which records how many games are played on the machine; (c) the "knock-off" meter

located inside the machine which records the number of rights to replay which have been eliminated by use of a "knock-off" switch. Exhibits 1 and 2 also have the first two types of recording devices but they do not have the "knock-off" meter or the "knock-off" switch. Appellee's argument is that the test of whether a machine is a gambling device within the meaning of the statute is the presence or absence of the knock-off meter. Appellee correctly states that if the machine has a knock-off meter recording rights of replay eliminated by the knock-off switch then it is not awarding "unrecorded" rights to replay and is, therefore, a gambling device within the statute. Appellee then erroneously concludes that if there is no record of rights to replay which have been knocked off, then there is no record of rights to replay at all and the machine is legal. Appellee offers several arguments to support its theory.

(1) Appellee: The word "record" implies permanence and the knock-off meter makes a record which lasts at least until the machine is opened and the meter read, whereas the number registered on the replay meter on the front of appellee's machines only lasts until the next game is played.

Permanence is a relative word and how long the information recorded has to last depends upon the purpose for which the information was preserved in the first place. The replay meter indicates the number of rights to replay and this record continues to exist after the player has completed the game consisting of five balls. The record will continue to exist until the replay button is pushed and another game started. it clearly lasts long enough for the location owner to see the record and compute the pay-off. Since the information as to rights to replay lasts long enough to be used to compute a pay-off, the purpose of preserving the information has been served and it is irrelevant how permanent thereafter it may be.

(2) Appellee: It is the declared policy of I.C. 1971, 35-25-1-1 to 35-25-1-8, being Burns §§ 10-2329 to 10-2336 to prevent "professional gambling" in Indiana and Exhibits 1 and 2 cannot be used for such purposes. Exhibits 3 and 4 can

be used for professional gambling because they have a knock-off button and a record of games knocked-off, enabling the *distributors* of the machines to compute the pay-offs. Exhibits 1 and 2 cannot be used for professional gambling because they do not make a record of games "knocked-off" and, therefore the *distributors* cannot compute the pay-offs.

Appellee assumes unless the machine distributor can compute the pay-offs and control the gambling there is no "professional gambling" involved. That is an erroneous assumption due to the statutory definition of "professional gambling" in § 10-2330 (3) :

> "(3) 'Professional gambling' means accepting or offering to accept, for profit, money, credits, deposits, or other things of value risked in gambling, or any claims thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool-selling and bookmaking; maintaining slot machines, one-ball machines or variants thereof, *pinball machines which award anything other than an immediate and unrecorded right of replay,* roulette wheels, dice tables, or money or merchandise pushcards, punchboards, jars or spindles, in any place accessible to the public; and conducting lotteries, gift enterprises, or policy or numbers games, or selling chances therein ; and the following shall be presumed to be included: conducting any banking or percentage games played with cards, dice or counters, or accepting any fixed share of the stakes therein." (Emphasis added.)

In *Robb* v. *State* (1968), Ind., 239 N. E. 2d 154, this Court said:

> "It appears that the gravamen of the crime of professional gambling is not the harm done to a third party, but rather the acceptance or offer to accept, for profit, money risked in gambling." 239 N. E. 2d at 156.

Appellee's major expert witness conceded that Exhibits 1 and 2 could be used for gambling:

> "The bar-tender can still pay-off, but he is betting with the player of the machine, the machine is not controlling the payoffs."

Exhibits 3 and 4 do not "control" the pay-offs either, they are merely used to compute the pay-offs. Using a pinball machine to gamble with the location owner is as much "professional gambling" within the meaning of § 10-2330(3) as gambling with the distributor of the machine.

(3) Appellee: For a machine to be used as a gambling device, it must have a knock-off button so that the location owner can quickly eliminate rights to replay which the player gives up for the cash pay-off. Exhibits 1 and 2 do not have knock-off buttons.

The record shows that games can be knocked-off machines like Exhibits 1 and 2 by simply pressing the replay button and shooting the balls or tilting the machine, or possibly by disconnecting the machine and re-connecting it. There was testimony that fifteen games could be taken off in less than one minute. The method is more inconvenient than if they had a knock-off switch, but that is not the test. The rights to replay can be eliminated easily enough to facilitate the use of the machine for gambling.

(4) Appellee: The language in the proviso in § 10-2330 (4) was taken from the Model Gambling Act proposed by the National Commissioners for Uniform State Laws and in the Commissioners' notes reveal that the test used to determine whether a machine "recorded" rights to replay, was the existence of the knock-off meter as on Exhibits 3 and 4. Machines without that recording device were not intended by the Commissioners to be classified as gambling devices.

It is true that when a statute needs to be construed the Court may consider the construction placed on identical statutes in other states made prior to the adoption of the statute by this State. *Ward* v. *State* (1919), 188 Ind. 606, 125 N. E. 397. It is also permissible to consider the notes of the Commissioners of Uniform Laws when construing a uniform statute. 1947 O.A.G. 150. However we resort to such rules of statutory construction only where the statute is uncertain, ambiguous or susceptible of two reason-

able interpretations. *Reome* v. *Edwards* (1948), 226 Ind. 229, 79 N. E. 2d 389. A statute which is clear and unambiguous must be given its apparent or obvious meaning and we believe the word "recorded" is in that category. "Recorded" refers to cases where information is preserved for the length of time necessary to make the intended use of the information. The replay meter on appellee's machines clearly perform that function.

(5)   Appellee: If the replay meter is held to be a recording device within the meaning of the statute, this will give uncontrolled discretion to the police to decide what characteristics of a machine make it a gambling device because almost any machine can be used for gambling in some way or other.

We do not agree. Under the statute a necessary feature of a pinball machine to be a gambling device is that it records rights to replay. Under *Peachey* v. *Boswell, supra, that recording* must be capable of being used to compute pay-offs. The test is not that the machine can be used for gambling in some way or other but that the record of rights to replay can be so used.

(6)   Appellee: The replay meter on the front of the machine registers free games *and* pre-paid games obtained when the player inserts more than one dime. Therefore, the number visible in the meter does not necessarily indicate games won and cannot be used to compute the pay-off for games won.

The trial court made the following findings of fact:

"11.   That said amusement pinball machines leased, sold and distributed by the plaintiff and others herein are operated by the player by inserting a dime, two nickels or a quarter in said machine.

"12.   That this insertion of a coin or coins permits the player to operate said machine from one to three times depending upon the coin inserted.

"13.   That if the coin inserted is a quarter, the reply meter will register three games, indicating to the player that he has a three game credit available for his playing."

It may be inferred from these findings that the replay meter may show up to three pre-paid games. Therefore, the number visible in the meter, to the extent it is greater than three, does necessarily indicate games won and can easily be used to compute pay-offs.

(7) Appellee: *Tinder* v. *Music Operating Co., supra,* and *Peachey* v. *Boswell, supra,* are both "on all fours" with this case and require an affirmance of the trial court judgment.

The sole issue in this case, whether a replay meter "records" rights to replay within the meaning of § 10-2330(4) was not presented nor discussed in either of those cases. At the time the *Tinder* case arose the statutory proviso to § 10-2330(4) excepted pinball machines which conferred "an immediate right of replay." While the case was pending the Legislature amended the act to read "an immediate and unrecorded right to replay." The Court stated:

> "It is suggested that, by reason of this amendment, the question presented by the case before us may be moot. However, it does not appear from the record that the right of replay was recorded on the machines under consideration in the case now before us. Obviously the purpose of the amendment was to further limit the type of pinball machines excluded from the penal provisions of the act. It seems apparent that it would be much more improbable that *unrecorded* free games might be exchanged for money or other things of value, which exchange is the test of legality of the use of such machines within the provisions of both the 1955 and the 1957 Acts." 237 Ind. at 55.

The Court never defined the word "record" or discussed what type of device would make a "record."

In *Peachey* v. *Boswell, supra,* this Court stated the issue to be:

> "Did the Legislature have the power to outlaw as gambling devices, pinball machines which award anything other than an immediate and unrecorded right to replay?" 240 Ind. at 611

The Court affirmed the following trial court judgment:

" 'WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendants are enjoined permanently from seizing pinball machines of the plaintiffs which do not have recording devices for registering free games, and the temporary injunction is modified and dissolved to the extent of allowing defendants to seize as contraband gambling devices those pinball machines so equipped with such recording devices for free games.' " 240 Ind. at 611.

There is nothing in the *Peachey* opinion to indicate that the "recording devices registering free games," the presence of which made the machines gambling devices, were anything other than the replay meters on appellee's machines in this case.

We hold that the trial court erred in making the following conclusions of law:

"1.   That the law is with the Plaintiff.

"2.   That said meter, indicator or counter displaying the number of free games won, or the number of games credited from the deposit of a coin, is not a 'recording device' within the meaning of Indiana Ann. Stat. Sec. 10-2330 (Burns 1968 Pocket Part).

"3.   That said 'Amusement Pin-ball machines, of the type distributed by plaintiff and those it represents herein, are not 'gambling devices' within the meaning of the aforesaid statute."

Trial court judgment reversed.

Givan, Hunter, and Prentice, JJ., concur; Arterburn, C. J., concurs in result with opinion.

### CONCURRING OPINION

ARTERBURN, C. J.—I concur in the result of this opinion in denying equitable relief against law enforcement officers who attempt to enforce violation of the criminal law. This is in line with my dissenting opinion in *Tinder v. Music Operating* (1957), 237 Ind. 33, 142 N. E. 2d 610. In that opinion I did not think that equity, by way of injunction, should attempt to take over and control the criminal side of the law.

Under American criminal jurisprudence a defendant, in a criminal case, is given the widest and most liberal opportunity to clear himself and prove himself innocent. Official discretion in prosecuting criminal activity is independent of the judicial branch of government.

To often we judges are prone to substitute our personal opinion, rather than let the criminal law take its regular course with the law enforcement officers in a separate branch of government. I can see no grounds for the criminal side of the court getting involved and restricting law enforcement.

NOTE.—Reported in 275 N. E. 2d 802.