UNITED FARM BUREAU MUTUAL INSURANCE COMPANY *v.* LARRY A. HANLEY, AND BRETT L. HANLEY.

[No. 2-1075A270. Filed February 28, 1977. Rehearing denied May 26, 1977. Transfer denied December 21, 1978.]

*William O. Schreckengast, Kitley, Schreckengast & Davis,* of Beech Grove, *Charles E. Herriman, Browne, Torrance, Spitzer, Herriman & Browne,* of Marion, for appellant.

*Stephen Johnson, Biddinger & Johnson,* of Marion, *Edgar W. Bayliff, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellees.

## CASE SUMMARY

BUCHANAN, P.J.—Plaintiff-Appellant United Farm Bureau Mutual Insurance Company (Farm Bureau), appeals from a Declaratory Judgment in favor of Defendants-Appellees, Larry A. Hanley and Brett L. Hanley, claiming the trial court erred in extending the uninsured motorist provisions of the company's automobile insurance policy to include persons injured by an insured, who is otherwise excluded from liability coverage under the "household exclusionary" clause of the policy.

We reverse.

## FACTS

This is an action for a declaratory judgment brought by Farm Bureau to determine the respective rights of the company and their named insured, Parent-Larry Hanley, and Claimant-Brett Hanley, son of the named insured.

On December 24, 1972, Farm Bureau issued an automobile insurance policy to the insured, Larry Hanley, on his car. This policy was in effect on June 13, 1973, when another son of the named insured, Allen Hanley, was operating a 1964 Chevrolet with the permission of the owner, Judy Arrendondo. While driving the Arrendondo vehicle, Allen Hanley collided with a 1974 Pontiac driven by Mark D. Gard. At the time of the accident Claimant, Brett Hanley, was riding with his brother Allen in the Arrendondo automobile. The accident took the life of Allen Hanley, but Claimant survived, sustaining multiple injuries for which he made claim against Farm Bureau under the terms of his father's policy.

The policy provided liability coverage under which Farm Bureau agreed:

> To pay on behalf of the *insured* all sums which the *insured shall become legally obligated to pay as damages* because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";

arising out of the ownership, maintenance or use of the owned automobile *or a non-owned automobile.* (emphasis supplied.)

Allen and Brett Hanley were both insureds under the terms of their father's policy which covered relatives of the named insured while operating or using a non-owned automobile with the permission of the owner.[1]

The policy also contained a household exclusion clause which stated:

This policy does not apply under Part I [Liability Coverage]:

. . . (12) to bodily injury to the insured or to any person related to the insured by blood, marriage or adoption and who is a resident of the same household as the insured;

Excluded from liability coverage for Allen Hanley's negligence, Claimant and Parent demanded damages from Farm Bureau under Part IV of the policy (uninsured motorist coverage), in which the Company had agreed:

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;

. . .

---

1. The policy defined an insured to include:
(2) with respect to a non-owned automobile; (a) the named insured; (b) a relative, provided his actual operation or, if he is not operating, the other actual use thereof is with the permission of the owner and is within the scope of such permission; . . .

A non-owned automobile was defined as:

"non-owned automobile" means an automobile or trailer used for the same purpose as an owned automobile or trailer and not owned by or furnished or available for the regular use of either the named insured or a relative but "non-owned automobile" does not include a temporary substitute automobile;

Neither party disputes the fact that the Arrendondo vehicle was a non-owned automobile permissively used by insureds Allen and Brett Hanley.

Farm Bureau rejected Hanleys' demand and thereafter commenced this action seeking a declaratory judgment enforcing the household exclusion clause against the Hanleys and denying that the operation of the exclusion qualified them for uninsured motorist coverage.

On April 29, 1975, the trial court rendered a judgment on the pleadings favoring uninsured motorist coverage for Claimant and Parent. The Court decided the household exclusion left Allen Hanley uninsured, and Claimant therefore qualified for uninsured motorist protection. In formulating its decision, the court made the following pertinent conclusions of law:

3. That by reason of the definition of an uninsured automobile under the General Endorsement Number 2 under the insurance contract between Farm Bureau and Larry A. Hanley, the automobile owned by Judy Arrendondo and operated by Allen L. Hanley, deceased, on the 3rd of June, 1973, was an automobile with respect to the use of which there was no bodily injury bond or insurance policy applicable at the time of the accident with respect to Allen L. Hanley, deceased, the person legally responsible for the use and operation of the Arrendondo vehicle;

4. That under the terms of the General Endorsement Number 2 of the insurance contract between Farm Bureau and Larry A. Hanley, the Arrendondo vehicle operated by Allen L. Hanley, deceased, on June 3, 1973, was an uninsured automobile with respect to the bodily injuries of Brett L. Hanley;

Farm Bureau appeals.

## ISSUE

The sole issue for disposition is:

Is the household exclusion clause contrary to the Indiana Uninsured Motorist Statute?

Farm Bureau claims the household exclusion clause is a legitimate device for preventing inter-family lawsuits which lend themselves to collusion, in that courts have traditionally upheld such clauses long before the Indiana Uninsured Motorist Statute [Ind. Code Section 27-7-5-1 (1976)] came into

being in 1965. The Legislature was presumably aware of the exclusion when enacting the statute and did not expressly prohibit such clauses. Further, the Arrendondo vehicle is not an uninsured automobile because Farm Bureau remains obligated to defend all other claims arising from the accident, other than those excepted under the household exclusion.

Parent and Claimant argue they are insureds under Part IV of the policy providing uninsured motorist coverage, and there is no liability insurance covering the person against whom Claimant is legally entitled to recover damages (i.e. Allen Hanley). The Uninsured Motorist Statute compels coverage in this situation, and if the household exclusion is interpreted so as to deny Parent and Claimant uninsured motorist coverage, the statute is violated.

## DECISION

*CONCLUSION*—It is our opinion the household exclusion clause does not violate the Indiana Uninsured Motorist Statute.

Can a claimant who is also simultaneously an insured and a tort-feasor collect from an insurance company under the uninsured motorist coverage of the policy, despite the household exclusion clause?

The roles of the relevant persons may be some clue to the answer.

Larry Hanley, the father, is an insured. His son, Brett, is an insured,[2] and the injured passenger-claimant. Brett's unfortunate brother, Allen, the deceased driver tort-feasor of the Arrendondo automobile, was also an insured.

So the question may be refined by asking if it is reasonable to construe the Uninsured Motorist Statute (the Statute) as embracing an insured tort-feasor who is purportedly con-

---

2. Multiple insureds are possible under the terms of the policy. See footnote one.

verted into an uninsured motorist driving an uninsured automobile by the operation of the household exclusion clause?

Indiana courts have not specifically answered the question, however phrased. Some restrictions on the operation of the Statute have been struck down.

The Indiana Uninsured Motorist Act [Ind. Code Section 27-7-5-1 (1976)], in relevant part provides:

> No automobile liability or motor vehicle liability policy or insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14 [9-2-1-15], as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, *for the protection of persons insured thereunder* who are legally entitled *to recover damages from* owners or operators of uninsured motor *vehicles because of bodily injury,* sickness or disease, including death, *resulting therefrom.* (emphasis supplied) (the Statute).

In Indiana the Statute has been liberally construed to prevent insurers from conditioning uninsured motorist coverage upon some fact or circumstance which would diminish the intended statutory protection. Located within the uninsured motorist section of the policy, these exclusions sought to specifically curtail coverage of uninsured motorists and were determined to be undue restrictions on the operation of the Statute.[3] No Indiana cases, however, have directly addressed the effect on the Statute of a household exclusion clause which limits general liability coverage.

---

3. *See Leist* v. *Auto-Owners Insurance Co.* (1974), 160 Ind. App. 322, 311 N.E.2d 828 (provision within uninsured motorist coverage reducing recovery by amount of workmen's compensation received, declared invalid as dilution of statutory coverage); *State Farm Mutual Automobile Insurance Co.* v. *Robertson* (1973), 156 Ind. App. 149, 295 N.E.2d 626 (exclusion within uninsured motorist provision denying coverage of an insured while occupying an owned vehicle, if such vehicle

·Courts in Illinois; Oregon and Iowa have awarded uninsured motorist coverage to insureds who were otherwise excluded from liability coverage by operation·of the household exclusion clause. In each case the court construed the applicable uninsured motorist statute.[4]

In *Bowsher* v. *State Farm Fire & Casualty Co.* (1966), 244 Ore. 549, 419 P.2d 606, Bowsher, the named insured, was a passenger in his own automobile which was being driven by Simpson who had no insurance. Simpson negligently collided with another vehicle, and Bowsher was injured.

Although he had no insurance of his own, Simpson was covered under a standard "permissive user" clause in the Bowsher policy, i.e., as an insured. Bowsher argued Simpson was an uninsured motorist, thereby activating the uninsured motorist provisions of the policy, which excluded an insured or a member of his family. State Farm, as here, claimed Simpson was not operating an uninsured automobile as defined in the policy, because the company remained obligated to defend the claim of *others* injured by the Bowsher vehicle.

In rejecting State Farm's contention, the only visible reason advanced by the Oregon Supreme Court is liberal construction of their statute:

> We hold that Bowsher and his injuries are the key to the problem. As far as Bowsher was concerned, Simpson was operating an "uninsured motor vehicle" within the meaning

was not insured under the policy, held invalid as an impingement upon statutorily mandated uninsured motorist coverage); *Cannon* v. *American Underwriters, Inc.* (1971), 150 Ind. App. 21, 275 N.E.2d 567 (exclusion, providing uninsured motorist coverage does not apply unless insured was operating or occupying an insured automobile at the time of the accident, nullified as a restriction, upon statutory coverage); *Patton* v. *Safeco Insurance Co.* (1971), 148 Ind. App. 548, 267 N.E.2d 859 ("excess-escape" clause in uninsured motorist provision found in derogation of uninsured motorist statute).

4. Ill. Rev. Stat. 1969, ch. 73, par. 755a; ORS 737.315(2).; I.C.A. § 516A.1. Although they vary in terminology, each statute essentially provides "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles."

of Bowsher's policy as the policy must be construed under ORS 736.317(2).

The trial court held that the legislative intent in requiring certain insurance policies to provide protection for policyholders injured by operators of "uninsured motor vehicles" *should be liberally construed* to the end that persons injured by uninsured motorists be protected to the limits of such policies to the same extent that they would have been protected if the tort-feasors had carried insurance. We agree. See *Peterson* v. *State Farm Ins. Co.*, 238 Ore. 106, 393 P.2d 651 (1964).

\* \* \*

We have been cited to no cases exactly like the one before us. We believe, however, that the proper focus of inquiry in such cases is to ascertain whether the injury for which a claim is made was covered by liability insurance, assuming that liability can be established. Such a focus seems more relevant than a general inquiry whether some kind of insurance covered, for some purposes, the automobile involved in the accident, regardless of the applicability of such insurance to the injuries sustained. The availability of public-liability insurance to protect strangers was of no value to Bowsher in this case. As to Bowsher's own injuries, the tort-feasor, if there was one, was wholly uninsured. Therefore, in the only way that could be relevant to the purposes of the statute, Bowsher's automobile was, as to Bowsher, an "uninsured motor vehicle." *Bowsher* v. *State Farm Fire & Cas. Co.*, *supra* at 551-53, 419 P.2d at 607-08 (emphasis added).

Faced with nearly identical facts, the highest courts of Iowa and Illinois have adopted the *Bowsher* rationale. *See Rodman* v. *State Farm Mutual Automobile Insurance Co.* (Iowa 1973), 208 N.W.2d 903; *Barnes* v. *Powell* (1971), 49 Ill.2d 449, 275 N.E.2d 377 (Chief Justice Underwood and Justice Davis dissenting).[5]

_____

5. Chief Justice Underwood accused the majority in *Barnes* v. *Powell*, *supra*, of distorting the Illinois uninsured motorist statute to accomplish a purely legislative result:

\* \* \* *It is to me clear* that in enacting the statute before us the *legislative focus was upon accidents involving more than one car, and the purpose was to provide protection against the ordinary situation involving damage resulting from collisions with other vehicles which were uninsured.* The exclusion from the policy coverage of damage caused by the operation of insured automobiles was, clearly, not pro-

The minority view seems to have no sound reasoning to support it. General statements about liberal construction of uninsured motorist statutes or construing an insurance policy against the insurer are not enough.

Decisions in Tennessee, Utah, Alabama and Kentucky represent the majority and the more justifiable view that the household exclusion does not conflict with statutory uninsured motorist coverage.[6] Generally, these precedents recognize a valid public policy behind the household exclusion which the legislature did not intend to abrogate by the enactment of an uninsured motorist statute: *Kay* v. *Kay* (1973), 30 Utah2d 94, 513 P.2d 1372; *Lammers* v. *State Farm Mutual Automobile Insurance Co.* (1972), 48 Ala.App. 36, 261 So.2d 757, *cert. denied,* 261 So.2d 766; *Holt* v. *State Farm Mutual Automobile Insurance Co.* (Tenn. 1972), 486 S.W.2d 734; *Allen* v. *West American Insurance Co.* (Ky. Ct. of Appeals 1971), 467 S.W.2d 123.

In *Holt* v. *State Farm Mutual Automobile Insurance Co.,* *supra,* Richard Holt negligently injured his passenger brother, Jimmy Holt, while driving an automobile covered by liability insurance containing a household exclusion. Jimmy Holt insisted the vehicle was uninsured as to his injuries, and the uninsured motorist provisions of the policy should therefore apply. The trial court denied Holt uninsured motorist coverage. On appeal, the Tennessee Supreme Court affirmed, rejecting Holt's contention the policy definition of an uninsured vehicle violated the State's uninsured motorist statute:

> The *intent of the statute is to require automobile liability insurance companies to provide their insureds' protection against drivers of vehicles without liability coverage.*

hibited by the statute, and the terms of the contract between the insurer and its policyholder should be enforced.
49 Ill.2d at 456, 275 N.E.2d at 380 (emphasis added).

6. *See* T.C.A. Section 56-1148 and 1149; U.C.A. (1953), 41-12-21.1; Code of Ala., Title 36, § 74(62a); K.R.S. 304.682 (recompiled as 304.20-020). With several variations, these statutes essentially provide "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury resulting therefrom . . . ."

The car in which Jimmy was riding, at the time of the accident, was covered by a liability insurance policy. This coverage was not available to him because he was specifically excluded, as we have pointed out, and not because of the lack of liability protection. It was stipulated State Farm paid the claims of the other passengers.

Considering the Act as a whole, it would be a strained construction of the Act to say it requires an "uninsured motor vehicle" be defined as to include uninsured motorist coverage for a person specifically excluded from liability coverage by the terms of the policy. *Holt* v. *State Farm Mut. Auto Ins. Co., supra,* at 737 (emphasis added).

The majority view is persuasive for four reasons:

*First,* the concept of a household exclusion is a common one which has long enjoyed judicial support.[7] Its purpose is to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control.[8] Such an exclusion is a natural target for the insurer's protection from collusive assertions of liability.

Although the validity of the household exclusion has as yet escaped appellate review in this state, the freedom of the parties to exclude risks from an insurance contract is well established. *See Culley* v. *Farm Bureau Mutual Insurance Co. of Indiana* (1946), 224 Ind. 483, 69 N.E.2d 19; *Shedd* v. *Automobile Insurance Co.* (1935), 208 Ind. 621, 196 N.E. 227; *American Underwriters, Inc.* v. *Turpin* (1971), 149 Ind. App.

---

7. *State Farm Mut. Auto. Ins. Co.* v. *Thompson* (9th Cir. 1967), 372 F.2d 256; *Hogg* v. *State Farm Mut. Auto. Ins. Co.* (1964), 276 Ala. 366, 162 So.2d 462; *Morris* v. *State Farm Mut. Auto. Ins. Co.* (1953), 88 Ga. App. 844, 78 S.E.2d 354; *Peninsula Ins. Co.* v. *Knight* (1969), 254 Md. 461, 255 A.2d 55; *Kentucky Farm Bureau Mut. Ins. Co.* v. *Harp* (Ky. 1967), 423 S.W.2d 233; *Fuchs* v. *Cheeley* (1969), 285 Minn. 356, 173 N.W.2d 358; *State Farm Mut. Auto. Ins. Co.* v. *Ward* (Mo. 1960), 340 S.W.2d 635; *State Farm Mut. Auto. Ins. Co.* v. *McBride* (Mo. App. 1972), 489 S.W.2d 229; *Nodak Mut. Ins. Co.* v. *Wacker* (1967), (N.D. 1967), 154 N.W.2d 776; *Great American Ins. Co.* v. *State Farm Mut. Auto. Ins. Co.* (1963), 412 Pa. 538, 194 A.2d 903.

*Also see* 50 A.L.R.2d 120 (1956); 46 A.L.R.3d 1024 (1972); 12 COUCH ON INSURANCE 2d § 45:509 (1964).

8. See Justice Davis' dissent in *Barnes* v. *Powell* (1971), 49 Ill.2d 449, 458, 275 N.E.2d 377, 381 (A "liability policy excludes such coverage because it is a liability policy and not an accident policy.")

473, 273 N.E.2d 761; *Mitzner* v. *Fidelity & Casualty Co.* (1927), 94 Ind. App. 362, 154 N.E. 881.

*Secondly,* there is no inkling in the language of the Statute that traditional means of insurer protection from collusion may not be availed of to exclude coverage of an insured tortfeasor for injury to a member of his family.[9]

To the contrary, the Indiana statute states:

> For the purpose of this act [27-7-5-1] the term "uninsured motor vehicle" shall, *subject to the terms and conditions of such coverage,* be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency. (emphasis added)

This same language appeared in the Kentucky Uninsured Motorist Statute, leading the Court in *Allen* v. *West American Insurance Co., supra* at 126, to observe:

> In weighing that question, it is appropriate to notice the opening words of the same section of the statute, which are:
> "For the purpose of this coverage (UM) the term 'uninsured motor vehicle' shall, *subject to the terms and conditions of such coverage,* be deemed to include an insured motor vehicle * * *." (emphasis added.)
> In using the italicized language, the Legislature recognized that there would be "terms and conditions of such coverage" to which the statute's application would be subject.

---

9. The policy defined an uninsured automobile as:
"Uninsured automobile" includes a trailer of any type and means:

(1) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent, or . . .

Farm Bureau has not denied that the liability provisions of the Hanley policy obligated it to defend all claims arising out of the accident except those asserted by a fellow family member, and therefore the Arrendondo vehicle was an insured and not an "uninsured automobile."

In that same portion of the statute, the Legislature enumerated only three situations in which an insured motor vehicle will be deemed an "uninsured motor vehicle" within the meaning of UM coverage. If the solons had intended that the UM provisions should become applicable with respect to an insured vehicle regardless of the policy provisions, it is difficult to discern why the words "subject to the terms and conditions of such coverage" were employed. What "terms" and what "conditions" are permissible?

So the absence from the Statute of any contrary definition of an uninsured vehicle and the Statute's language that liability be "subject to the terms and conditions of such coverage" indicate legislative recognition of an insurer's right to define an uninsured automobile in a consistent manner.

Such a construction gives effect to the ordinary and plain meaning of the words used. While the Statute should be liberally construed, it is not to be contorted to achieve a result contrary to its unambiguous terms. If the intent of a statute is unmistakable and its meaning so plain and unambiguous that there is no room for judicial construction, we will adopt the meaning plainly expressed. *See* IC 1971, 1-1-4-1 (Burns Code Ed.) ; *Cheney* v. *State ex rel.* (1905), 165 Ind. 121, 74 N.E. 892; *Ind. State Highway Comm. et al.* v. *White* (1973), 259 Ind. 690, 291 N.E.2d 550; *Grody* v. *State* (1972), 257 Ind. 651, 278 N.E.2d 280; *Eads* v. *J. & J. Sales Corp.* (1971), 257 Ind. 485, 275 N.E.2d 802; *Reome* v. *Edwards* (1948), 226 Ind. 229, 79 N.E.2d 389; *Piersol* v. *Hays* (1943), 113 Ind. App. 214, 47 N.E.2d 838.

*Third,* Indiana cases have held invalid restrictions on uninsured motorist coverage which specifically limited or eliminated such coverage. See footnote three. They have not held invalid an exclusion as to general liability, such as that created by a family exclusion clause.

*Fourth,* the Statute was designed to protect insured persons against injury by an uninsured wrongdoer, not a tort-

feasor who is fully insured except as to himself or members of his family. As stated in *Ely* v. *State Farm Ins. Co.* (1971), 148 Ind. App. 586, 590, 268 N.E.2d 316, 319:[10]

> Without contrary knowledge we must infer that the intent of the Indiana General Assembly in enacting this statute paralleled that of the Legislatures of 45 other states passing similar uninsured motorist statutes—*to provide the insured a modicum of protection against the negligent acts of financially irresponsible motorists.* (emphasis supplied) (citation omitted)

If in passing the Uninsured Motorist Statute the Legislature intended to nullify the household exclusion, it could have expressly so provided:

> * * * It is equally within the province of the legislature to be more specific in its uninsured motorist coverage requirements. The General Assembly has not chosen to do so. (citations omitted)

> For us to extend coverage in this situation would be to rewrite the clear and unambiguous language of the insurance contract. This we are not empowered to do. *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 183 N.E.2d 842. *Ely* v. *State Farm Ins. Co., supra* at 591-92, 268 N.E. 2d at 320.

The purpose of the Statute appears to be equally served by interpretations which hold invalid specific restrictions on uninsured motorist coverage as such, (see footnote three) and interpretations which consistent with the statutory purpose require that there be "physical contact with another automo-

---

10. In *Ely*, this Court addressed a similar contention that a policy condition, requiring physical contact by a hit-run vehicle before uninsured motorist coverage applied, contravened the Uninsured Motorist Statute:

The policy requirement of "physical contact" is not unreasonable and does not unduly restrict the statute. See *Prosk* v. *Allstate Ins. Co.* (1967), 82 Ill. App.2d 457, 226 N.E.2d 498. It attempts to prevent fraudulent claims by requiring of the claimant tangible proof of collision with the vehicle of an uninsured motorist. Thus, its function is to define the risk underwritten by the insurers in this state so that fulfillment of the liberal aims of the law is not incompatible with the economic realities of insurance coverage. *Ely* v. *State Farm Ins. Co., supra* at 590, 268 N.E.2d at 319).

bile (Ely) or that the tort-feasor not be a member of the insured's family.

Such general limitations are not unreasonable in light of the statutory objective of protecting insured motorists from other motorists who are uninsured, "subject to the terms and conditions of such coverage."

Thus, the trial court erred in finding the Arrendondo vehicle an uninsured automobile and in concluding the Claimant was eligible for uninsured motorist coverage.

The judgment is reversed.

White, J. and Lowdermilk, J. (by designation) concur.

## PETITION FOR REHEARING

BUCHANAN, P.J.—The Appellees rightfully point out that in our opinion[1] there are references to Claimant Brett L. Hanley as a tort-feasor. He was not a tort-feasor. Rather he was a passenger in a car driven by his tort-feasor brother, Allen, as clearly appears in the statement of facts.

Our inadvertent reference to Brett as a tort feasor has no effect whatsoever on our conclusion that the household exclusion clause operated to exclude Brett from uninsured motorist coverage.

Petition for Rehearing denied.

White, and Lowdermilk, JJ. (by designation), concur.

NOTE.—Reported at 360 N.E.2d 247.

---

1. *United Farm Bureau Mut. Ins. Co.* v. *Hanley* (1977), 172 Ind. App. 329, 333, 360 N.E.2d 247, 249-50.